*Decision will be entered under Rule 50.*

ESTATE OF A. W. SORELLE, DECEASED, A. W. SORELLE, JR., CHARLES W. SORELLE, IRVING SORELLE, AND JACK SORELLE, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61144. Filed October 31, 1958.

*R. A. Wilson, Esq.*, for the petitioner.
*Roy E. Graham, Esq.*, for the respondent.

#### OPINION.

RAUM, *Judge:* The Commissioner determined a deficiency in the amount of $23,027.16 in income tax of A. W. SoRelle (sometimes hereinafter referred to as SoRelle) for 1945. The present case grows out of an earlier case, Docket No. 36411, which involved SoRelle's income taxes for 1946 and 1947. He had died in 1949, and the petitioner in both cases is the same, namely, his estate. The earlier proceeding was consolidated with two others and is reported sub nom. *Elsie SoRelle,* 22. T. C. 459. No appeal has been taken from the decision, which is now final. The determination of deficiency for 1945 is based upon three items adjudicated in Docket No. 36411 with respect to the taxpayer's liability for 1946. The disposition of those items turned upon the proper system of accounting to be used and upon the correct determination of opening inventories for 1946. The Commissioner's position herein is that the adjustments which he made for 1945 are required by the prior decision and that authority for such adjustments, which are otherwise barred by the statute of limitations, is found in

sections 1311–1315 of the 1954 Code. The case has been submitted solely on a stipulation of facts which incorporates by reference substantially all of the relevant materials in the record and files in the earlier proceeding.

The central issue in Docket No. 36411 related to the method of accounting to be used in computing income. SoRelle was a farmer and rancher. For a number of years, beginning at least with 1939, he had been using a hybrid system of accounting, reporting income on a cash receipts and disbursements basis plus the use of inventories. The determination of deficiencies for 1946 and 1947 accepted that hybrid system as correct but made certain adjustments with respect to inventories and other items. The estate challenged the entire system of accounting. It contended that a hybrid system was not permissible; that net income must be determined in keeping with that system (cash or accrual) which, according to the general and controlling characteristics of the taxpayer's books, predominates; and that since SoRelle's books were kept predominantly on the cash basis, his income tax liabilities for 1946 and 1947 must be determined on that basis. The decision of the Court in this connection rejected the positions of both the Commissioner and the estate. It found (22 T. C. at 464) that the "hybrid system did not clearly reflect SoRelle's net income, and the accrual method of accounting most clearly reflects SoRelle's net income." As a result of that conclusion it held that certain cattle sales in the amount of $28,732.83, which had been consummated in December 1945 but which SoRelle had reported for 1946, should be eliminated for that year, since "on the accrual basis they are properly a part of his 1945 income." 22 T. C. at 470. Also, although it approved the Commissioner's adjustments as to closing inventories for 1946, the Court accepted alternative contentions of the estate as to opening inventories for 1946, by providing (i) for a $14,310 increase in the amount of the opening inventory for cattle which had been reported, and (ii) for an opening wheat inventory in the amount of $12,665 where none at all had been reported.

In his determination of deficiency for 1945, the Commissioner has included the December 1945 sales in SoRelle's 1945 gross income, and he has increased the 1945 closing inventories so as to be consistent with the increases in the 1946 opening inventories. We deal separately with each of the adjustments.

(a) *The December 1945 cattle sales.*—It appears that sales of cattle in the aggregate amount of $28,732.83 were consummated in December 1945 but that payment was actually received in January 1946. Although these sales were reported on the 1946 returns, it was held that they should have been reported on the 1945 returns, in view of the Court's conclusion that an accrual method must be used. Accordingly,

those sales were eliminated from SoRelle's 1946 income, and the Commissioner's present determination includes SoRelle's community one-half thereof, $14,366.42, in his income for 1945. The Commissioner relies solely upon the provisions of sections 1311–1315 of the 1954 Code [1] as authority for his action. We agree with petitioner that these provisions are not applicable to this item.

Our decision in *Elsie SoRelle* produced a "double exclusion" of the type described in section 1312 (3) (A),[2] and that decision now qualifies as a "determination" within the meaning of section 1313 (a) (1).[3] However, section 1311 (b) [4] precludes adjustment of 1945 income unless there was "adopted in the determination a position maintained by the taxpayer * * * and the position * * * is inconsistent with the erroneous * * * exclusion" from 1945 income.[5]

The estate argues that its position in Docket No. 36411 regarding the cattle sales was not inconsistent with the exclusion from 1945 income, and that this Court did not adopt its position. A fair examination of the materials connected with that case bears out the estate's

---

[1] These provisions are captioned "Mitigation of Effect of Limitations and Other Provisions." The general rule is spelled out as follows :

SEC. 1311. CORRECTION OF ERROR.

(a) GENERAL RULE.—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

[2] SEC. 1312. CIRCUMSTANCES OF ADJUSTMENT.

The circumstances under which the adjustment provided in section 1311 is authorized are as follows :

   *        *        *        *        *        *        *

(3) DOUBLE EXCLUSION OF AN ITEM OF GROSS INCOME.—

(A) ITEMS INCLUDED IN INCOME.—The determination requires the exclusion from gross income of an item included in a return filed by the taxpayer or with respect to which tax was paid and which was erroneously excluded or omitted from the gross income of the taxpayer for another taxable year, or from the gross income of a related taxpayer ; * * *

[3] SEC. 1313. DEFINITIONS.

(a) DETERMINATION.—For purposes of this part, the term "determination" means—

(1) a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final ;

[4] SEC. 1311. CORRECTION OF ERROR.

(b) CONDITIONS NECESSARY FOR ADJUSTMENT.—

(1) MAINTENANCE OF AN INCONSISTENT POSITION.—Except in cases described in paragraphs (3) (B) and (4) of section 1312, an adjustment shall be made under this part only if—

   *        *        *        *        *        *        *

(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made, and the position * * * maintained by the taxpayer in the case described in subparagraph (B) is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

[5] Although the limiting condition of section 1311 (b) (1) is inapplicable in cases described in paragraphs (3) (B) and (4) of section 1312, there is no suggestion here that the present situation falls within those paragraphs, and we are satisfied that they are not operative here

contention. It explicitly argued in favor of using a cash receipts and disbursements method for computing SoRelle's income—a method that would have required the inclusion of the sales in 1946 income. Respondent on the other hand was in favor of the method that SoRelle had used for the years 1939 through 1947. That method was a hybrid using inventories and cash receipts and disbursements. We held that respondent's Regulations 111, sections 29.22 (c)–6 and 29.41–2, made mandatory the use of the accrual method. And if any "position" can be said to have been the source for our decision it is one contained in the regulations.

To say that the estate in Docket No. 36411 argued in favor of a method of accounting different from that used by SoRelle, was given what it wanted, and that this satisfies the requirements of section 1311 (b), is to distort the issues in that case. At most it can be said that the estate's position was inconsistent with SoRelle's method of accounting, but section 1311 (b) (1) (B) requires the position to be inconsistent with the earlier exclusion. And, as we have pointed out, the estate's position in favor of a cash method was consistent with the exclusion from 1945 income. Although a few quotations from the petition in Docket No. 36411 and the estate's brief in that case, now relied upon by the Commissioner, may give some colorable support to the contention that it sought approval for an accrual system of accounting, we are fully satisfied that when they are read in proper context, the estate was seeking no such thing, and at no time did it request that the December 1945 cattle sales be eliminated from SoRelle's 1946 income.

The earlier decision was based on the regulations and was opposed to the estate's position. Accordingly, respondent cannot avail himself of sections 1311–1315 and no adjustment can be made in SoRelle's 1945 income on account of the cattle sales.

(b) *The closing cattle inventory for 1945.*—Although SoRelle realized some income from the sale of sheep, hogs, rye, wheat, and wool, the bulk of his income had its source in sale of cattle. He maintained a farm and a ranch which were about 42 miles apart. He kept a breeding herd of cows and bulls on the ranch, and a herd of ordinary beef cattle on the farm. Most of his income was derived from the sale of beef cattle from the ordinary herd.

In the deficiency notice for 1946 the Commissioner determined a total closing cattle inventory in the amount of $310,543 as opposed to the $251,344.16 closing cattle inventory reported in the amended return for that year. At issue in this connection in Docket No. 36411 (assuming that inventories were to be used at all) was whether inventories should be determined by the "farm-price" method of valuation, which the Commissioner had employed. With an exception relating to the breeding herd (and a comparatively insignificant num-

ber of milk cows) presently to be noted, the Court found that it had been SoRelle's practice to value all his inventories pursuant to the farm-price method, and since there was no evidence that permission had ever been obtained to change that inventory valuation method, the Court sustained the Commissioner's contention that the farm-price method was mandatory and found a closing cattle inventory for 1946 in the amount of $312,278. See 22 T. C. at 468, 471.

In their challenge to the Commissioner's use of the farm-price method, the estate in Docket No. 36411, contended in the alternative that if that method were to be approved, the opening inventory for 1946 which had been reported as $166,347.50—a figure which the Commissioner did not disturb in his determination of deficiency for 1946— must similarly be revalued and revised upward. In this connection, the Court found that of the foregoing opening inventory for 1946, $116,647.50 represented the value which SoRelle had assigned to his ordinary herd, that this value was in accord with the then current market prices for the ordinary cattle involved and therefore correct under the farm-price method, but that the remaining portion of the opening inventory relating to the breeding herd and milk cows had been arrived at by an average actual cost method. See 22 T. C. at 465, 466, 471. Accordingly, the Court sustained the estate's alternative contention, and upon revaluing the entire cattle inventory by use of the farm-price method, found an opening cattle inventory for 1946 in the amount of $180,657.50.[6] See 22 T. C. at 465–467. As a consequence of that finding, the opening cattle inventory for 1946 was increased by $14,310.

The determination of deficiency in the present case is based in part upon a corresponding increase in the closing inventory for 1945. SoRelle's community one-half of this increase, namely, $7,155, is the second item now in controversy before us. We agree with the Commissioner that the correction which he proposes as to this item is authorized.

The estate attacks the adjustment under review upon the ground that correction of the closing inventory for 1945 is not permissible without at the same time revaluing the opening inventory for 1945. We disagree. The application of the statutory provisions does not contemplate a reopening of the tax liability for the barred year except to the extent that it is affected by the *item* that is being shifted from one year to another. See sec. 1314 (c).

The increase of SoRelle's opening cattle inventory for 1946, in accordance with the alternative contention made by the estate in Docket No. 36411, resulted in the shifting of income from 1946 to

---

[6] This figure is somewhat at variance with the $181,655.60 valuation proposed by the estate. See 22 T. C. at 465.

1945. This is precisely the type of situation that is governed by the statutory provisions upon which the Commissioner relies. Cf. *Gooch Milling & Elevator Co.* v. *United States*, 78 F. Supp. 94 (Ct. Cl.) ; *M. Fine & Sons Manufacturing Co.* v. *United States*, 162 F. Supp. 763 (Ct. Cl.). Moreover, by reason of peculiar facts present in this case it is highly doubtful whether there could be a revaluation of the opening 1945 inventory that would be of any benefit to petitioners. SoRelle and his first wife, Laura, were divorced in January 1945, and there was a division of property between them. His 1945 return discloses income from two sources that are pertinent for present purposes—one in Schedule C dealing with his profit from farm and ranching operations, and the other in Schedule E described as income from "Liquidation of community property." Apparently, SoRelle and Laura had divided between themselves all the inventory on hand, and that inventory was completely liquidated during the year 1945, as shown by a sheet incorporated in the return in connection with Schedule E, which disclosed a closing inventory of zero with respect to the community property being liquidated in 1945. At the same time, Schedule C—dealing with "Profit from Business"—was prepared on the basis of an opening inventory of zero for 1945. Thus, it appears that SoRelle recommenced his regular *business* operations as of the beginning of 1945 without any inventory. But the closing 1945 inventory which was adjusted by the Commissioner's determination related to his regular business, and even if the cognate opening inventory for 1945 were to be reexamined, it is clear that regardless of the method of valuation, there would be no change, since there was no opening business inventory to revalue.

We have examined various other contentions made by the estate, but we think that the adjustment under attack was proper.

(c) *The closing wheat inventory for 1945.*—In determining the deficiency for 1946 in Docket No. 36411, the Commissioner used a closing wheat inventory without at the same time allowing any opening wheat inventory for 1946. The estate argued that if inventories were required then it was entitled to the benefit of an opening 1946 inventory for wheat. The Court in *Elsie SoRelle* agreed with that alternative contention, and found a total opening inventory for 1946 of 17,000 bushels of wheat, one-half of which (SoRelle's community interest) it valued at $12,665. See 22 T. C. at 467, 471. The consequence of this holding was a shifting of that amount of income from 1946 to 1945. We agree with the Commissioner's contention that this item, like the cattle inventory item, was properly the subject of the adjustment which he made here with respect to the closing inventory for 1945.

The estate argues that the matter is governed by section 1312 (3) (B),[7] and that the adjustment is therefore precluded by section 1311 (b) (2),[8] since assessment of a deficiency for 1945 was barred at the time the notice of deficiency in Docket No. 36411 was sent. However, we think that this item is governed by section 1312 (3) (A), see footnote 2, *supra*, as was the cattle inventory item, rather than by section 1312 (3) (B), and therefore section 1311 (b) (2) is not applicable. The same result is called for here that was reached with respect to the cattle inventory item.

*Decision will be entered under Rule 50.*

---

[7] SEC. 1312. CIRCUMSTANCES OF ADJUSTMENT.

The circumstances under which the adjustment provided in section 1311 is authorized are as follows:

\* \* \* \* \* \* \*

(3) DOUBLE EXCLUSION OF AN ITEM OF GROSS INCOME.—

\* \* \* \* \* \* \*

(B) ITEMS NOT INCLUDED IN INCOME.—The determination requires the exclusion from gross income of an item not included in a return filed by the taxpayer and with respect to which the tax was not paid but which is includible in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer.

[8] SEC. 1311. CORRECTION OF ERROR.

(b) CONDITIONS NECESSARY FOR ADJUSTMENT.—

\* \* \* \* \* \* \*

(2) CORRECTION NOT BARRED AT TIME OF ERRONEOUS ACTION.—

(A) DETERMINATION DESCRIBED IN SECTION 1312 (3) (B).—In the case of a determination described in section 1312 (3) (B) (relating to certain exclusions from income), adjustment shall be made under this part only if assessment of a deficiency for the taxable year in which the item is includible or against the related taxpayer was not barred, by any law or rule of law, at the time the Secretary or his delegate first maintained, in a notice of deficiency sent pursuant to section 6212 or before the Tax Court of the United States, that the item described in section 1312 (3) (B) should be included in the gross income of the taxpayer for the taxable year to which the determination relates.