ELAINE YAGODA (FORMERLY ELAINE DRECHSLER), ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 82641–82644. Filed October 22, 1962.

*Sidney Gelfand, Esq.*, for the petitioners.
*Dean P. Kimball, Esq.*, for the respondent.

[1] Proceedings of the following petitioners are consolidated herein : Trust For The Benefit of Lena Drechsler, Lena Drechsler, Exec. of The Estate of Gus Drechsler, Deceased Trustee, Docket No. 82642 ; Trust For The Benefit of Elaine Drechsler, Lena Drechsler, Trustee, Docket No. 82643 ; and Lena Drechsler, Docket No. 82644.

OPINION.

Raum, *Judge:* 1. *Mitigation of limitations.*—The deficiences determined in these consolidated cases relate to the years 1944 and 1945

and are barred by the statute of limitations, as pleaded by petitioners, unless the Commissioner successfully proves that the mitigation provisions of sections 1311–1314 of the 1954 Code apply herein. Pertinent portions of these sections are set forth in the margin.[2]

---

[2] SEC. 1311. CORRECTION OF ERROR.

(a) GENERAL RULE.—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, * * * then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

(b) CONDITIONS NECESSARY FOR ADJUSTMENT.—

(1) MAINTENANCE OF AN INCONSISTENT POSITION.—Except in cases described in paragraphs (3)(B) and (4) of section 1312, an adjustment shall be made under this part only if—

\* \* \* \* \* \* \*

(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made,

and the position * * * maintained by the taxpayer in the case described in subparagraph (B) is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

\* \* \* \* \* \* \*

(3) EXISTENCE OF RELATIONSHIP.—In case the amount of the adjustment would be assessed and collected in the same manner as a deficiency (except for cases described in section 1312(3)(B)), the adjustment shall not be made with respect to a related taxpayer unless he stands in such relationship to the taxpayer at the time the latter first maintains the inconsistent position in a return, claim for refund, or petition (or amended petition) to the Tax Court of the United States for the taxable year with respect to which the determination is made, or if such position is not so maintained, then at the time of the determination.

SEC. 1312. CIRCUMSTANCES OF ADJUSTMENT.

The circumstances under which the adjustment provided in section 1311 is authorized are as follows:

\* \* \* \* \* \* \*

(3) DOUBLE EXCLUSION OF AN ITEM OF GROSS INCOME.—

(A) Items Included in Income.—The determination requires the exclusion from gross income of an item included in a return filed by the taxpayer or with respect to which tax was paid and which was erroneously excluded or omitted from the gross income of the taxpayer for another taxable year, or from the gross income of a related taxpayer; * * *

SEC. 1313. DEFINITIONS.

(a) DETERMINATION.—For purposes of this part, the term "determination" means—

(1) a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final;

\* \* \* \* \* \* \*

(c) RELATED TAXPAYER.—For purposes of this part, the term "related taxpayer" means a taxpayer who, with the taxpayer with respect to whom a determination is made, stood, in the taxable year with respect to which the erroneous inclusion, exclusion, omission, allowance, or disallowance was made, in one of the following relationships:

\* \* \* \* \* \* \*

(6) partner, * * *

SEC. 1314. AMOUNT AND METHOD OF ADJUSTMENT.

(b) METHOD OF ADJUSTMENT.—The adjustment authorized in section 1311(a) shall be made by assessing and collecting, or refunding or crediting, the amount thereof in the same manner as if it were a deficiency determined by the Secretary or his delegate with respect to the taxpayer as to whom the error was made or an overpayment claimed by such taxpayer, as the case may be, for the taxable year or years with respect to which an amount is ascertained under subsection (a), and as if on the date of the determination one year remained before the expiration of the periods of limitation upon assessment or filing claim for refund for such taxable year or years. * * *

The first requirement in section 1311(a) of these complex provisions is that there be a "determination" as defined in section 1313(a). The parties agree that the decision of the District Court in the refund suit brought in behalf of Gus for the years 1944 and 1945, *Drechsler* v. *United States*, 161 F. Supp. 319 (S.D. N.Y.), constitutes such "determination," and that this determination became final on September 19, 1958, when an appeal from the District Court's decision was dismissed by stipulation of the parties.

The next requirement is that the determination be "described in one or more of the paragraphs of section 1312." The Commissioner claims that the circumstances set forth in paragraph (3)(A) of section 1312 apply to the determination of the District Court. He argues in terms of the statute, that the decision of the District Court in effect "require[d] the exclusion from [Gus'] gross income" of items of partnership income of T. F. Jackson Company "with respect to which tax was paid [by Gus]," that such items were attributable to the trusts for Lena and Elaine in 1944 and attributable to Lena, individually, and Elaine's trust in 1945, and that these items were "erroneously excluded" from the gross income of the trusts and Lena who as partners of Gus were his "related taxpayer[s]." Section 1312(3)(A) is the only paragraph upon which the Commissioner relies to bring the mitigation provisions into play in the present litigation, and we agree with the Commissioner that such paragraph does describe the effect of the determination of the District Court. It is true, as petitioners contend, that the exclusion of partnership income on the part of the trusts and Lena was the result of the Commissioner's erroneous overassessments after the trusts and Lena had correctly reported such income and paid taxes on it. Nevertheless, the net effect was a "double exclusion" of such partnership income, as described in section 1312(3)(A), and unless the mitigation provisions do apply herein, such income will now escape taxation. Insofar as the provisions of section 1312(3)(A) are concerned, it is immaterial that the Commissioner is partly to blame for the error to be corrected. All that is required under these provisions is that the determination result in a double exclusion of items of gross income from the income of the taxpayer with respect to whom the determination is made and from the income of related taxpayers. This has occurred here. Cf. *Geraldine Snyder Weinrich*, 37 T.C. 365, on appeal (C.A. 9).

The third prerequisite as set forth in section 1311(a) is that on the date of the determination, and by this the statute means on the date such determination becomes final, correction of the effect of the erroneous exclusions relating to the trusts and Lena is prevented by the operation of any law or rule of law. This requirement is not in issue. It is stipulated that when the determination of the District Court became final, correction of the erroneous overassessments re-

lating to the trusts and Lena was barred by the statute of limitations. Indeed, it is because of this fact that the Commissioner now seeks to make the present adjustments under the mitigation provisions.

The fourth and fifth requirements applicable herein are contained in subparagraphs (b)(1) and (b)(3) of section 1311 and are called "Conditions Necessary for Adjustment." Section 1311(b)(1)(B) specifies that when the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, as is true here, there must be "adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made" (i.e., Gus) which "is inconsistent with the erroneous * * * exclusion * * *" from the income of the trusts and Lena. This condition is captioned "Maintenance of an Inconsistent Position" in the statute. Since the determination of the District Court upheld Gus' claim that he was not taxable on the net partnership income of T. F. Jackson Company which was attributable to the partnership interests of the trusts in 1944 and to Lena and to Elaine's trust in 1945, which claim was totally inconsistent with the exclusion of such income from the trusts' and Lena's income in these years, this condition would appear to be fully met.

Petitioners contend, however, that *they* have never taken a position inconsistent with that of Gus, since their 1944 and 1945 tax returns were filed consistently with those of Gus, they paid their taxes consistently with his payments, they have never requested a refund of any taxes, and they were not in agreement with the overassessments determined by the Commissioner. Thus, they insist that the position taken by Gus and *their* positions have been continually in accord. Their argument, however, misconceives the scope of the statute. Section 1311(b)(1) speaks in terms of the maintenance of an inconsistent position "by the taxpayer with respect to whom the determination is made." But "the taxpayer" with respect to whom the District Court made "the determination" was Gus. And he (or his representative) did indeed maintain a position in the District Court which that tribunal adopted [3] that was inconsistent with the exclusion of the same income from the gross income of the trusts and Lena for the periods involved. That is all that the statute demands. *Cory* v. *Commissioner*, 261 F. 2d 702 (C.A. 2), affirming 29 T.C. 903, certiorari denied 359 U.S. 966; *Geraldine Snyder Weinrich, supra* at 374; *Ross* v. *United States*, 148 F. Supp. 330 (D. Mass.). There is

---

[3] In contrast to the facts herein, in *Estate of A. W. SoRelle*, 31 T.C. 272, the requisite earlier determination there involved did not adopt a position maintained by the taxpayer with respect to whom it was made but, on the contrary, adopted a position at odds with the one maintained by the taxpayer. Therefore, we held that the requirements of section 1311(b)(1) were not met in that case.

no further requirement of the maintenance of inconsistent positions by the related taxpayers.[4]

But even if there were such further requirement of the maintenance of inconsistent positions by the related taxpayers (whose liabilities were not before the District Court and who therefore were not maintaining any position in that litigation), petitioners would not be entitled to prevail on this ground. We think that the evidence of record fails to support their premise that they have never taken a position inconsistent with that of Gus. Granted petitioners and Gus viewed the tax consequences of their partnership relationship the same prior to the unsolicited overassessments, we think that they did not view them the same thereafter. Regardless of whether petitioners agreed with the Commissioner's theory in making the overassessments, they did permit him to apply such overassessments to the deficiencies determined against Gus. By so doing, they in fact adopted a position inconsistent with that maintained in behalf of Gus in the refund suit. The trusts and Lena might have elected to have had such overassessments paid directly to themselves. Or they might have refused to accept the overassessments either directly or indirectly through a credit for the benefit of Gus. However, by allowing the overassessments to be used in paying the deficiencies determined against Gus, the trusts and Lena in effect accepted the overassessments and the position which the overassessments represented that they were not taxable on partnership income. As a result, when the determination of the District Court upheld Gus' claim that they were taxable on their shares of partnership income and that he was not taxable on such shares, the court necessarily adopted a position contrary to the exclusion of this income from the gross income of the trusts and Lena. And it is at this point of time, namely, when the "determination" is made (sec. 1311(b)(1)), that the required inconsistency must exist.

As already noted, the fifth requirement for application of the mitigation provisions herein is contained in section 1311(b)(3). In the context of the present litigation that provision in substance states that a correcting adjustment may not be made as a deficiency with

---

[4] Petitioners' reference to certain language in the legislative history does not establish the contrary. Thus in the Senate Finance Committee Report (S. Rept. No. 1567, 75th Cong., 3d Sess., p. 49) it is stated: "The legislation here proposed is based upon the following principles: (1) To preserve unimpaired the essential function of the statute of limitations, corrective adjustments should (a) never modify the application of the statute except when the party or parties in whose favor it applies shall have justified such modification by active inconsistency * * *." But this reference is obviously to the inconsistency that is spelled out in the statute in section 1311(b), namely, the inconsistency generated by the conduct of the taxpayer, who in this case was Gus. Certainly, there is no indication in the committee report that it was adding a further requirement or condition not contained in the statute itself, which is perfectly clear in this respect. It is sufficient that the taxpayer's conduct produced the ultimate inconsistency that calls for the correction authorized by sections 1311–1314.

respect to the trusts and Lena as related taxpayers of Gus unless these petitioners stood "in such relationship to the taxpayer [i.e., Gus] at the time the latter first maintain[ed] the inconsistent position in a return [or] claim for refund * * * for the taxable year with respect to which the determination [was] made." The only relationship in question, under the related taxpayer definition in section 1313(c), is that of "partner." Gus first maintained a position inconsistent with the exclusion of partnership income to the trusts and Lena in his tax returns for 1944 and 1945 when he took the position that their respective shares of partnership income were taxable to them and not to him. *Geraldine Snyder Weinrich, supra* at 374; *Ross* v. *United States, supra* at 333. Thus, section 1311(b)(3) makes it a necessary condition that the petitioner trusts stood in a partnership relationship to Gus when he filed his 1944 income tax return and that the trust for the benefit of Elaine and Lena, individually, stood in such relationship to Gus when his 1945 return was filed. There is no dispute between the parties that the necessary partnership relationship existed on or about March 15, 1945, when Gus filed his original 1944 income tax return and on or about May 15, 1945, when he filed an amendment to that return. However, there is a controversy with respect to the following year. It is stipulated that the T. F. Jackson Company partnership "terminated its business and existence on August 31, 1945, but thereafter such actions were taken as were necessary to wind up its affairs and make final distribution of its assets." On the basis of this stipulation, petitioners contend that the partnership relationship terminated as of August 31, 1945, and hence that Lena and the trust for Elaine could not have been "partners" of Gus when his 1945 tax return was filed sometime between April 3 and September 1 of 1946.[5] It is the Commissioner's position that the partnership relationship continued throughout the winding up period, which the evidence indicates lasted until as late as July 21, 1947,[6] and thus that it existed in 1946 when Gus' 1945 return was filed.

We think that Lena and the trust for the benefit of Elaine continued to be "partners" within the meaning of the statute during 1946. On the record before us, the only local law which appears applicable is New York State law, since the partnership apparently was formed

---

[5] Petitioners do not argue that the intervening death of Gus on January 12, 1946, prevented the requisite relationship from existing when Lena, as executrix under his will, filed his 1945 income tax return. Since the partnership was dissolved prior to Gus' death and not because of his death, it is undisputed that his estate stood in the same relationship to the partnership and the partners after his death as Gus did prior to his death.

[6] It is stipulated that both Lena and the trust for the benefit of Elaine received distributions from T. F. Jackson Company on July 21, 1947. Prior to this, each had received a distribution from the partnership in November of 1945. No intervening or subsequent distributions from the partnership are shown in the record.

in New York, existed there, and filed its tax returns in that State. In section 61 of the New York Partnership Law it is specifically provided that "on dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." Cf. *Rossmoore* v. *Commissioner*, 76 F. 2d 520, 521 (C.A. 2), where it is noted that this rule, enacted in New York as part of the Uniform Partnership Act, was also true at common law. In the light of the foregoing, it appears from the stipulated facts, regardless of the terminology used,[7] that at best the partnership of T. F. Jackson Company was *dissolved* as of August 31, 1945, but that the partnership did not in fact *terminate* until the winding up of its affairs was completed which occurred presumably in July of 1947. It follows that Elaine's trust and also Lena remained "partners" in 1946 when Gus' 1945 income tax return was filed. We conclude, therefore, that the condition set out in section 1311(b)(3) is met on this record in respect to both the taxable years in issue.

Thus, all of the statutory requirements and conditions for application of the mitigation provisions have been proven to exist. Nevertheless, petitioners strenuously argue that such provisions were never intended to be applicable in circumstances such as are present here where the record shows that the Commissioner had an opportunity (upon learning that a refund claim had been filed in behalf of Gus) to protect his position with regard to them prior to the running of the statute of limitations. Petitioners contend that the Commissioner in these circumstances is not entitled to relief under the mitigation provisions.

It is true that the record reveals that a claim for refund in behalf of Gus for the years 1944 and 1945 was filed on August 9, 1949, when the Commissioner still had ample time to protect his position with regard to the related overassessments to petitioners herein, and that shortly thereafter counsel representing Gus expressly advised the Commissioner's representative that such protective action should be taken. But the Commissioner's failure in this regard does not affect the present cases. While the mitigation provisions might have been formulated in terms of the Commissioner's or the taxpayer's ability to correct the error when the inconsistency involved was first brought to his attention, they were not so written. Instead, all that the provisions of sections 1311–1314 require is that correction of the error is prevented by the operation of any law or rule of law when the *de-*

---

[7] In using the word "terminated" the stipulation was obviously referring to the "dissolution" of the partnership, not its "termination." If it did refer to the latter, then it would be a conclusion of law, contradicted by the underlying facts which were also stipulated, and such stipulation of law would not be binding on this Court. Cf. *Swift & Co.* v. *Hocking Valley Ry. Co.*, 243 U.S. 281; *Estate of Sanford* v. *Commissioner*, 308 U.S. 39, 51; *J. W. Gaddy*, 38 T.C. 943.

*termination* becomes final (secs. 1311(a) and 1313(a)(1)) and that the notice of deficiency or claim for refund making the correcting adjustment be sent within 1 year after such determination becomes final (sec. 1314(b)). These conditions were met in the present cases. While it may be true—and on this we express no opinion—that in the absence of the mitigation provisions the Commissoner's inaction in protecting his position with regard to petitioners might now bar an action by him based on equitable relief, no such rule exists under the statutory mitigation provisions. The Commissioner is free under these provisions to wait and see how the inconsistent position fares in the courts before he must react to make correcting adjustments within 1 year of the final determination made by the courts. Whether the Commissioner or, in other circumstances, the taxpayer *should* be given relief from the bar of limitations in these circumstances is not for this Court to decide. The mitigation provisions, as we read them, permit such relief, and it is our duty to apply the statute accordingly. We think that the Commissioner is not barred from taking advantage of the mitigation provisions on the facts herein.

Petitioners' reliance on *J. C. Bradford*, 34 T.C. 1051, is misplaced. In that case the Commissioner was not only aware of the existence of the error prior to the expiration of limitations, he in fact litigated the alleged error during that period with both taxpayers involved. When the Commissioner finally lost in both cases, this Court held in *Bradford* that the mitigation provisions did not entitle him to a second day in court on a claim which had already been fully litigated. No comparable facts exist here; the present litigation represents the Commissioner's first attempt to claim that petitioners are taxable on the partnership income of T. F. Jackson Company.

On brief petitioners raise for the first time the contention that application of the mitigation provisions to them and imposition of any further income tax liability with respect to the years 1944 and 1945 would be unconstitutional as a deprivation of property without due process of law as guaranteed by the fifth amendment to the Constitution of the United States. Since this constitutional question was neither pleaded nor raised at the trial herein, it is not properly before us. *Estate of Rebecca Edelman*, 38 T.C. 972, 979; *Estate of Louis Solowey*, 15 T.C. 188, 190, affirmed per curiam 189 F. 2d 968 (C.A. 2), certiorari denied 342 U.S. 850. In any event, there appears to be but very little substance to the point.

We hold that the mitigation provisions of sections 1311–1314 apply herein to permit the proposed adjustments to the income tax of the petitioner trusts for their taxable period in 1944 and to the income tax of Lena, individually, and the trust for the benefit of Elaine for 1945.

2. *Transferee liability of Lena.*—Lena's trust terminated on April 9, 1945, when all of its property and accumulated income were dis-

tributed to her. As transferee, she then became accountable (up to an amount not in excess of what had been distributed to her) for all *existing* debts of the trust, including taxes, whether or not such debts had yet been determined, or were even known at that time. *Scott* v. *Commissioner*, 117 F. 2d 36, 38 (C.A. 8); *Powers Photo Engraving Co.*, 17 T.C. 393, 399, remanded on other grounds 197 F. 2d 704 (C.A. 2).

When the distribution was made, on April 9, 1945, the trust's original return for 1944 had already been filed and the $13,491.63 tax shown thereon had been paid. Thereafter, on or about May 15, 1945, the amended return was filed and the additional amount of $3,942.15 shown thereon to be due was then paid. Thus, by May 15, 1945, an aggregate of $17,433.78 had been paid in behalf of the trust. Its taxes for 1944 were then fully paid. At that point it owed the Government nothing further, and Lena's liability as a transferee was then fully discharged.

The liability which the Commissioner now asserts arises because of the subsequent erroneous overassesment. To be sure, the trust has again become liable for 1944 taxes; but that liability, in the peculiar context of this case, is the consequence of events which transpired long after Lena became a transferee. Her transferee liability came to an end no later than May 15, 1945, when the 1944 taxes were fully paid. If she became liable subsequently in connection with the erroneous overassessment, such liability was not that of a transferee in the circumstances of this case. We express no opinion upon whether the Government may have some other remedy against Lena, but we hold that her liability as transferee had been fully discharged prior to the overassessment, and that she did not become chargeable again *as a transferee.*

3. *Transferee liability of Elaine.*—The Commissioner has proceeded against Elaine as transferee of her trusts for both 1944 and 1945. The situation here is entirely different from the one involving Lena. Elaine's trust terminated November 12, 1958, about 2 months after the determination in the refund suit in behalf of Gus had become final. The holding of the District Court made it clear that the overassessments affecting Elaine's trust for 1944 and 1945 were erroneous. Thus, when Elaine terminated her trust and left it without assets, she became responsible for its debts, including any that might arise from the correction of the erroneous overassessments under the mitigation provisions. Of course, her transferee liability is limited in amount to the assets distributed to her, and the only real issue between the parties is whether the Commissioner has proved that the value of the assets distributed to Elaine upon the termination of her trust is sufficient to cover the determined transferee liability. All of the facts in this regard were stipulated.

It was specifically stipulated that Elaine's trust terminated on or about November 12, 1958, "and all of its assets then remaining were transferred to Elaine." The only assets which the record affirmatively shows were "then remaining" in the trust were certain cash balances in various bank accounts in the trust's name. Thus, there was $40.80 in the trust's account at the Bowery Savings Bank, $3,278.75 at the Emigrant Industrial Savings Bank, and $4,674.84 at the Franklin National Bank, or an aggregate amount of $7,994.39. The stipulation does not indicate whether the series E bond in the face amount of $5,000, purchased by the trust on June 6, 1945, was still held by the trust at its termination, nor is there any showing that the trust's account at the Rockaway Savings Bank (which it is stipulated had a balance of $7,727.53 on January 4, 1949, when such balance was "transferred to a new passbook which is not available") remained in existence on or about November 12, 1958, and if it did what its then existing balance was. Taking the evidence as we find it, and bearing in mind that the burden of proof is upon the Commissioner in transferee cases to establish the value of the assets transferred, we think that the Commissioner has proved at best that Elaine received assets of a total value of $7,994.39 on the termination of the trust. Accordingly, we hold that such amount is the extent of her transferee liability in these circumstances. Cf. *Blanche S. Sharp*, 35 T.C. 1168; *Estate of George L. Cury*, 23 T.C. 305, 339.

> *Decisions in Docket Nos. 82641, 82643, and 82644 will be entered under Rule 50.*
>
> *Decision in Docket No. 82642 will be entered for the respondent.*