JACK O. CHERTKOF AND SOPHIE CHERTKOF, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2345-75. Filed June 21, 1976.

---

*Edward S. Smith* and *Lawrence M. Katz,* for the petitioners.
*Robert B. Perry,* for the respondent.

DAWSON, *Chief Judge:* This motion for summary judgment was assigned to and heard by Special Trial Judge Randolph F. Caldwell, Jr. The Court agrees with and adopts his opinion which is set out below.[1]

## OPINION OF THE SPECIAL TRIAL JUDGE

CALDWELL, *Special Trial Judge:* Respondent determined a deficiency in the income tax of Jack O. and Sophie Chertkof (hereinafter referred to as petitioners) for the calendar year 1966 in the amount of $229,390.71. This case is presently before the Court on petitioners' motion for summary judgment on the ground that respondent is barred by the statute of limitations from assessing the 1966 deficiency.

Petitioners, on or about April 13, 1967, filed their joint Federal income tax return for the calendar year 1966. The petitioners on their 1966 income tax return reported a long-term capital gain in the amount of $167,007.56 in respect of a distribution made to Jack Chertkof by E & T Corp. in redemption of his shareholdings in said corporation.

The respondent, in auditing the petitioners' 1965, 1966, and 1967 returns, determined that the amount reported by the taxpayers as a long-term capital gain on their 1966 return should have been reported on their 1965 return as dividend income in the amount of $348,258.20.

Pursuant to this determination the respondent issued a notice of deficiency on April 11, 1969, wherein a deficiency for the year 1965 was determined in the amount of $191,350.46, and an overassessment was determined for the year 1966 in the amount of $41,837.46. On August 29, 1969, respondent refunded to

---

[1] Since this is a pretrial motion for summary judgment and there is no genuine issue of material fact on the issue presented therein, the Court has concluded that the posttrial procedures of Rule 182, Tax Court Rules of Practice and Procedure, are not applicable in these particular circumstances. This conclusion is based on the authority of the "otherwise provided" language of that Rule. The parties were afforded a full opportunity to present their views on the law at the hearing and in briefs filed prior to and after such hearing.

petitioners the amount of the above overassessment for 1966, which petitioners accepted and retained. On August 25, 1969, petitioners paid the deficiency determined against them by the respondent for 1965 and, on April 7, 1970, filed in the United States District Court for the District of Maryland a suit seeking refund of the 1965 deficiency assessment.

Petitioners maintained in the District Court before Judge Frank Kaufman that 1965 was the wrong year for inclusion of the contested "redemption item" and that 1966 was the correct year for such inclusion. The District Court agreed that the right year for the inclusion of the item was 1966, not 1965, and awarded judgment to petitioners on November 14, 1973. Respondent filed a Notice of Appeal from the decision of the District Court on January 11, 1974, but the appeal was voluntarily dismissed by respondent on February 19, 1974. Thus the judgment of the United States District Court became final on the last-mentioned date.

The notice of deficiency involved in the present case was mailed to petitioners on December 18, 1974, and was issued by the Office of the District Director, Internal Revenue Service, Baltimore, Md. Such date is more than 7 years and 8 months after the filing of the 1966 return on or about April 13, 1967. Yet such date is within a year from the date on which the judgment of the District Court became final, as required by section 1314(b) of the Internal Revenue Code of 1954. The notice of deficiency raises the questions whether the item of distribution in redemption is taxable as dividend income or as a distribution in full payment in exchange for stock and whether the value of the distribution item is $348,278.20 as determined by respondent, or $167,027.56 as reported by petitioners in their 1966 return.

Petitioners' motion does not seek to reach the merits of this case, i.e., the amount and characterization of the distribution by the E & T Corp. to Jack Chertkof. Rather the basis of petitioners' motion is that the statute of limitations bars the present action because the mitigation provisions of sections 1311-1315 of the 1954 Code are not available to respondent to remove said bar imposed against the assessment of the deficiency for the taxable year ended December 31, 1966.

A close scrutiny of sections 1311-1315 reveals that the respondent in the present case can avail himself of the mitigation

provisions and assert the proposed adjustment only if all of the following conditions are met:

(1) There must have been an error in a tax year now closed (i.e., 1966). Sec. 1311(a).

(2) There must have been a "determination," under section 1313(a) with respect to the item giving rise to the error, for some other year (i.e., 1965).

(3) The error must have been of a kind specified in section 1312, i.e., one of the "circumstances of adjustment" enumerated in section 1312 must have occurred.

(4) The party who prevailed in said "determination" must have maintained a position inconsistent with the erroneous treatment. Sec. 1311(b).

It is clear that respondent's action in April 1969, refunding the tax paid by petitioners on the redemption item for that year, effectively and erroneously excluded the redemption item from petitioners' 1966 income. It is likewise clear that Judge Kaufman's judgment in the District Court case (reported as *Perma-Rock Products, Inc. v. United States,* 373 F.Supp. 159 (D. Md. 1973)) holding that the redemption item was properly includable in petitioners' income for 1966, and not 1965, was a "determination" within the meaning of section 1313(a)(1). Hence, the first two of the above prerequisites have been satisfied.

With respect to the third condition, respondent contends that correction of the error is authorized because the circumstances of the present case fall within section 1312(3)(A) which requires there have been a double exclusion of an item of income. The statute provides in pertinent part:

(3) DOUBLE EXCLUSION OF AN ITEM OF GROSS INCOME.—

(A) ITEMS INCLUDED IN INCOME.—The determination requires the exclusion from gross income of an item * * * with respect to which tax was paid *and* which was erroneously excluded or omitted from the gross income of the taxpayer for another taxable year, or from the gross income of a related taxpayer; * * * [Emphasis added.]

As stated, the District Court's determination required the exclusion of the redemption item from the gross income of the petitioners for the taxable year 1965. It is also undisputed that the redemption item was an item of gross income with respect to which tax was paid for the taxable year 1965. The first requirement of the section 1312(3)(A) has thus been satisfied.

The thrust of petitioners' argument is that there was no erroneous exclusion of the redemption item from the gross income of the petitioners in the taxable year 1966 because the petitioners included the redemption item in their 1966 return, and the subsequent refund of taxes paid with respect to that item was forced upon them. Petitioners' view of the statute is that an item is not erroneously excluded unless the party relying upon the bar of the statute of limitations makes the error. In effect, the petitioner is asking this Court to insert the phrase "by the taxpayer" into the above section immediately after the phrase "which was erroneously excluded or omitted" in a situation where it is the taxpayer seeking the bar of the statute of limitations.

Respondent contends with respect to the second requirement of section 1312(3)(A) that the redemption item was erroneously excluded from petitioners' gross income for the taxable year 1966 by respondent's determination of April 11, 1969, and his subsequent refund made to and accepted by the petitioners. Respondent argues that section 1312(3)(A) does not require a specific party in the litigation to make the erroneous exclusion or omission; rather, that the statute requires only that the item be "erroneously excluded * * * from the gross income of the taxpayer for another taxable year." Respondent argues that this requirement has been met.

We believe that the petitioners' argument is without merit and that the decided cases fully support respondent's position. The case of *Albert W. Priest Trust,* 6 T.C. 221 (1946), speaks directly to the question of which party must make the error before the mitigation provisions may be invoked. In *Priest,* the Estate of Albert W. Priest, of which the petitioner there was a transferee, was allowed a deduction for the amounts currently distributable to the beneficiaries by the Commissioner of Internal Revenue for the period for which the fiduciary filed a fiduciary tax return—January 1 to October 8, 1938.

At the same time the Commissioner determined that those amounts should be included in the income of the beneficiaries and accordingly assessed deficiencies for the calendar year 1938. The basis for these inclusions stemmed from the Commissioner's determination that the estate was not in the process of administration during 1938.

One of the beneficiaries appealed to the Tax Court from the determination of the deficiency. She alleged in her petition that the estate was in process of administration from January 1 to October 8, 1938; that any income received during that period was income of the estate, and taxable thereto; and that no part thereof was taxable to her except what had actually been distributed to her.

The Tax Court adopted the position contended for by her (the beneficiary), and held that the estate was in process of administration until October 11, 1938; that the amount in dispute was not currently distributable to her; and that she was not taxable thereon. See *Itola M. Evans Ransom,* 2 T.C. 647 (1943). The Commissioner thereupon determined a deficiency against petitioner arising out of the deduction erroneously allowed to its transferor. He relied on section 3801 of the Internal Revenue Code of 1939 (predecessor to sections 1311-1315), since the statute of limitations otherwise prevented adjustment of the error.

The Court in *Priest* held section 3801 to be applicable and said at page 225: "The erroneous action in this case is the allowance of a deduction [by the respondent] to the estate for an amount currently distributable to a beneficiary." The Court, disagreeing with petitioner's interpretation of the statute, went on to say at page 226: "It does not seem important to us who proposed the allowance of the deduction, or upon what theory. The important fact is that it was allowed, that tax was paid pursuant to the allowance of the deduction, and that the action was erroneous."

In *Eleanor B. Burton,* 1 T.C. 1198 (1943), the petitioner's treatment of the item in question was found to be consistently correct at all times. Nevertheless the Court found the mitigation provisions to be applicable because of the respondent's erroneous treatment of an item (exclusion from gross income of an item and refunds made pursuant thereto) and the petitioner's maintenance of an inconsistent position therewith.

In *Burton,* the income of a trust was paid to petitioner during the years 1934, 1935, and 1936, and such amounts were included in her tax returns for those years. The Commissioner determined that the income of the trust was taxable to petitioner's husband, the grantor of the trust, and not to petitioner. Pursuant thereto, the grantor paid the deficiencies assessed against him, and the petitioner received refunds for her overpayment of tax. On April

22, 1940, the Supreme Court promulgated its opinion in the case of *Helvering v. Fuller,* 310 U.S. 69 (1940). On the basis of this decision, petitioner's husband filed claims for refund which the Commissioner allowed. The Commissioner thereupon determined a deficiency against the petitioner, reinstating the income originally reported by petitioner in her returns for 1934, 1935, and 1936. The Court at page 1203 stated:

While their original treatment of the item was correct, as matters stood when the *Fuller* case was decided the trust income had been taxed to the husband and, through tax refunds made to the wife, had been excluded from her gross income. In light of the *Fuller* decision the inclusion in the husband's gross income and the exclusion from the wife's gross income were erroneous. * * *

More recent cases contain statements concerning the "erroneous exclusion" requirement of section 1312(3)(A) which support respondent's position. In *Elaine Yagoda,* 39 T.C. 170 (1962), affd. 331 F.2d 485 (2d Cir. 1964), cert. denied 379 U.S. 842 (1964), this Court focused on section 1312(3)(A) and said at page 179:

Section 1312(3)(A) is the only paragraph upon which the Commissioner relies to bring the mitigation provisions into play in the present litigation, and we agree with the Commissioner that such paragraph does describe the effect of the determination of the District Court. It is true, as petitioners contend, that the exclusion of partnership income on the part of the trusts and Lena [petitioner] was the result of the Commissioner's erroneous overassessments after the trusts and Lena had correctly reported such income and paid taxes on it. Nevertheless, the net effect was a "double exclusion" of such partnership income as described in section 1312(3)(A), and unless the mitigation provisions do apply herein, such income will now escape taxation. Insofar as the provisions of section 1312(3)(A) are concerned, it is immaterial that the Commissioner is partly to blame for the error to be corrected. All that is required under these provisions is that the determination result in a double exclusion of items of gross income from the income of the taxpayer with respect to whom the determination is made and from the income of related taxpayers. This has occurred here * * *

The above cases all involve "related taxpayers." Petitioners argue that there should be a distinction drawn on that basis. We do not agree.

The Court of Claims made it very clear in *Birchenough v. United States,* 410 F.2d 1247, 1251 (Ct. Cl. 1960), that the erroneous exclusion from the gross income of the taxpayer for another taxable year need not be made by the taxpayer, in order to satisfy the requirement of section 1312(3)(A):

Nor is it relevant to the operation of section 1312(3)(A) that the Government has also shown inconsistency, in a sense, by arguing earlier that 1954 was the correct year, and now maintaining the rightness of 1950-52. The provision was designed, among other things, to allow the Government to make corrections after a court ruling had revealed the error in the Service's initial position. The Government's "fault" in taking its first view—at least if it was done in good faith—was not to prevent it from collecting the revenue or to absolve the taxpayer from all tax on the item. Once the "determination" showed the error in the prior Service position, the Service could accept the court's ruling, where the item had been entirely excluded, and correct the mistake—despite the passage of the limitations period—because of the taxpayer's own inconsistency. That is why Congress wrote the subsection which it considered to be remedial, not punitive. See *Yagoda v. Commissioner, supra,* 331 F.2d at 490-91; 2 Mertens, Law of Federal Income Taxation §§14.01-.04 14.07 (Malone rev. 1967). After all, "the overriding purpose of section 3801 [of the 1939 Code, now secs. 1311-1315 of the 1954 Code] is to permit an equitable adjustment by treating an error as if it had never existed." *United States v. Rachal,* 312 F.2d 376, 383 (C.A. 5, 1962).

We thus conclude from the present facts that the District Court made a determination that required the exclusion from gross income of the redemption item with respect to which tax was paid on August 25, 1969. Respondent erroneously excluded this item from the gross income of petitioners for another year, 1966, by his determination on April 11, 1969, and his subsequent refund made to and accepted by the petitioners. We are satisfied that both requirements of section 1312(3)(A) have been met.

With respect to the fourth prerequisite mentioned above, petitioners argue that respondent cannot show the inconsistent position required by section 1311(b)(1) because the statute demands, where the adjustment requires a deficiency assessment, that petitioners have actively exploited the statute of limitations and have actively taken an inconsistent position in such a manner as to have inequitably avoided tax. Petitioners assert that they have at all times been consistent in maintaining that the redemption item should be included in 1966 and passive in not requesting any refund for 1966. Petitioners rely heavily on the legislative history behind the mitigation provisions to bolster their arguments.

Respondent contends that "active inconsistency" is not necessary to mitigation of limitation on deficiency assessment, and urges that section 1311(b)(1) requires simply that, in situations where the adjustment would result in deficiency assessment by the respondent, the taxpayer must have maintained a position

which is adopted in the determination, and that the position so adopted must be inconsistent with the erroneous treatment, i.e., the erroneous exclusion of the redemption item in the present case. Respondent contends that these requirements have been met under the present facts.

We believe that respondent's position is correct with respect to section 1311(b)(1), and that the requirements of such section have been satisfied.

Section 1311(b)(1) provides in pertinent part:

an adjustment shall be made under this part only if—
* * *

(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made,

and the position * * * maintained by the taxpayer. * * * is inconsistent with the erroneous * * * exclusion * * *

In *Albert W. Priest Trust, supra,* the petitioner earnestly argued that there had never been any inconsistency in its position or that of a related taxpayer, so far as their contentions were concerned. Petitioner pointed out that its initial fiduciary return was filed on the theory that it was an estate in process of administration, and this was also the position of the beneficiary, which position was adopted by the determination of the Tax Court. The Court stressed two points in its decision:

(1) The petitioner's stance throughout the proceedings was not consistent as petitioner had urged.

(2) Assuming the petitioner to have been consistent in its contentions, section 1311(b)(1) is not affected by such consistency.

As to the first point, the Court noted at page 226:

The deduction which was allowed, and which is the subject of the dispute here, was allowed on the initiative of the Commissioner, who having adopted the theory * * *, followed that theory to its logical result and allowed the deduction in his computation of petitioner's tax liability. Petitioner *accepted* that result and *paid the tax computed* on that theory. Petitioner's present argument seems to suggest that it may, nevertheless, have continued privately to maintain its original position. It expressly suggests that whatever inconsistency exists here springs solely from the respondent's erroneous theory in the first instance. [Emphasis added.]

Then the Court goes on to make the second point, also at page 226:

There is implicit in petitioner's argument an interpretation of the statute with which we cannot agree. We do not think there is any requirement that the position of the taxpayer which is adopted in the determination must be inconsistent with a position theretofore maintained by that of a related taxpayer. The sole requirement of the statute is that the position so adopted be inconsistent with the prior erroneous allowance of the deduction. * * *

The Court in *Eleanor B. Burton, supra* at 1203, stated succinctly the test of section 1311(b)(1):

The adjustment under section 3801 [precursor to secs. 1311-1315], if it takes the form, as here, of the determination of a deficiency, is limited by subsection (b) to instances where there has been adopted in the determination (viz. allowance of the donor's refund claims) a position maintained by the taxpayer with respect to whom the determination was made (namely, the husband-grantor), which position is inconsistent with the error (in this case, the erroneous exclusion or omission of the trust income from the gross income of petitioner, the related taxpayer).

The same "consistency" argument was before the Court in *Elaine Yagoda, supra,* where the Court said at page 180:

Petitioners contend, however, that *they* have never taken a position inconsistent with that of Gus [a related taxpayer], since their 1944 and 1945 tax returns were filed consistently with those of Gus, they paid their taxes consistently with his payments, they have never requested a refund of any taxes, and they were not in agreement with the overassessment determined by the Commissioner. Thus, they insist that the position taken by Gus and *their* positions have been continually in accord. Their argument, however, misconceives the scope of the statute. Section 1311(b)(1) speaks in terms of the maintenance of an inconsistent position "by the taxpayer with respect to whom the determination is made." But "the taxpayer" with respect to whom the District Court made "the determination" was Gus. And he (or his representative) did indeed maintain a position in the District Court which that tribunal adopted that was inconsistent with the exclusion of the same income from the gross income of the trusts and Lena [therein petitioners] for the periods involved. That is all that the statute demands. * * *

On appeal, the Second Circuit in *Elaine Yagoda* affirmed the Tax Court decision and held specifically at page 490 that "active inconsistency" was not necessary to mitigation of the statute of limitations on deficiency assessments, and it was not necessary to invocation of those provisions that taxpayers have sought actively to exploit the statute of limitations.

Petitioners rely heavily on the case of *Kent Homes, Inc. v. Commissioner,* 455 F.2d 316 (10th Cir. 1972), revg. 55 T.C. 820 (1971). There the Commissioner determined that the taxpayer had a gain as a result of a condemnation in its taxable year ending

January 31, 1958. Taxpayer paid the deficiency and in its refund suit asserted that 1963 was the proper year for reporting the gain. The District Court found that the transaction did not occur in 1958 but was consummated in 1959. Though the statutory period had run as to the taxable year 1959, the Commissioner issued a notice of deficiency and sought to invoke the mitigation provisions. The Court of Appeals reversed this Court's decision for the Commissioner.

The distinguishing feature between *Kent Homes* and the present case is that in *Kent Homes* the issue was not whether the taxpayer had to maintain a position inconsistent with the erroneous treatment by the respondent or a position inconsistent with the taxpayer's position on his return or before the Commissioner in administrative proceedings. Rather the issue was *what, in fact, was the position maintained by the taxpayer in the District Court and was that position adopted.* This Court had divided views on what exactly was the taxpayer's position that was adopted by the District Court, evidenced by the majority opinion by Judge Tannenwald, a concurring opinion by Judge Simpson, another concurring opinion by Judge Quealy, and a dissent by Judge Sterrett. Implicit in the various opinions, however, was the fact that, to satisfy the requirements of section 1311(b)(1), the taxpayer's position, whatever it was determined to be, had to be adopted by the District Court, and this position so adopted had to be inconsistent with the taxpayer's erroneous omission of the item for 1959. Judge Simpson in *Kent Homes,* 55 T.C. 820, 836-837 (1971), made this point clear:

> The applicability of section 1311 does not depend upon whether the Court in the earlier determination adopted an inconsistent position—rather, the question is whether the position maintained by *Kent Homes* was inconsistent with its failure to report the gain for the proper taxable year [the error]. Before the District Court, the corporation argued that the gain was taxable in a later year, but in fact, it did not report the gain for any subsequent year. In this case, we have now decided that the gain was taxable in 1959. The corporation's [*Kent Homes*] failure to include the gain for 1959 [the error] is inconsistent with its position that the gain was taxable in a year subsequent to 1958. [Emphasis added.]

The Court of Appeals, in reversing this Court, focused not so much on what the position was which was maintained by the taxpayer, but rather on whether the taxpayer's position was adopted at all. This is evident from Judge Doyle's statement at page 320:

We are thus faced with a situation in which the Commissioner had the facts before it but failed to interpret and apply them to the legal theory on which it was proceeding, and while the taxpayer helped the court along in its ruling that 1958 was not the proper year, it was the government's overlooking the date of the execution of the agreement that produced the result. The taxpayer all the while argued that 1963 was the taxable year.

Thus, the contribution of the taxpayer to the decision that 1958 was not the proper year was in aid of its theory that 1963 was and hence its part in the district court's result was defensive or negative and not affirmative and positive. Again, it merely aided the court in finding the true facts.

Implicit in this decision is the fact that the taxpayer's position, if adopted, must be inconsistent with the taxpayer's erroneous treatment. Judge Doyle characterized the issue at page 319: "This in turn requires us to decide whether the district court adopted a position maintained by the taxpayer, which position was inconsistent with the taxpayer's erroneous omission."

In the present case there is no issue as to what the petitioners' position was in the District Court or as to whether petitioners' position was adopted. Here, unlike *Kent Homes,* there are only 2 years in question. Either the redemption item was reportable in 1966 or it was reportable in 1965. The position maintained by the taxpayer before the District Court was that the redemption item was not reportable in 1965 because the transaction occurred in 1966. That the District Court adopted this position is evidenced by Judge Kaufman's remarks in footnote 1 in *Perma-Rock Products, Inc. v. United States, supra* at 161:

On October 29, 1971, after hearing oral argument in Civil No. 70-403-K on cross-motions for summary judgment with regard to the issue of whether a distribution by E & T. Corporation to Jack Chertkof in redemption of his stock was taxable to the Chertkofs in 1965, this court indicated to counsel at that time that in its opinion 1965 was not the proper year to tax the questioned distribution. This court hereby adopts those earlier indicated views and concludes that this distribution to Jack by E & T in redemption of Jack's two shares of stock was taxable to Jack in 1966. * * *

Petitioners cite the legislative history behind sections 1311-1315 and their predecessors as support for their proposition that section 1311(b)(1) requires "active inconsistency" by the taxpayer in situations where correction of the error calls for deficiency assessment. This argument was raised in *Albert Priest, supra,* and this Court there stated:

We are convinced that Congress did not intend to limit the application of the statute to cases where inconsistent positions were knowingly and deliberately

assumed for the purpose of achieving tax advantages, although these no doubt were most persuasive of the need for corrective legislation. In fact, the report of the Senate Finance Committee indicates that it intended "to take the profit out of inconsistency, whether exhibited by taxpayers or revenue officials, and whether fortuitous or the result of design." P. 49, S. Rept. 1567, 75th Cong., 3d Sess. * * * [6 T.C. at 226].

After this Court in *Elaine Yagoda, supra,* concluded that section 1311(b)(1) did not require any "active inconsistency" we commented on petitioners' argument utilizing the legislative history in footnote 4, 39 T.C. at 181:

Petitioners' reference to certain language in the legislative history does not establish the contrary. Thus in the Senate Finance Committee Report (S. Rept. No. 1567, 75th Cong., 3d Sess., p. 49) it is stated: "The legislation here proposed is based upon the following principles: (1) To preserve unimpaired the essential function of the statute of limitations, corrective adjustments should (a) never modify the application of the statute except when the party or parties in whose favor it applies shall have justified such modification by active inconsistency * * *." But this reference is obviously to the inconsistency that is spelled out in the statute in section 1311(b), namely, the inconsistency generated by the conduct of the taxpayer * * *. Certainly, there is no indication in the committee report that it was adding a further requirement or condition not contained in the statute itself, which is perfectly clear in this respect. It is sufficient that the taxpayer's conduct produced the ultimate inconsistency that calls for the correction authorized by sections 1311-1314.

On appeal in *Elaine Yagoda, supra,* the Second Circuit also struck down taxpayers' argument concerning the legislative history of the provisions:

Thus we conclude that the Senate Finance Committee did not use the term "active inconsistency" in the pejorative sense that taxpayers seek to ascribe to it. In fine, we are not persuaded that anything in the legislative history compels us to engraft upon the statute an additional criterion regarding the relative fault of the parties, such as that suggested by the taxpayers, which would detract from its remedial effectiveness. * * * [331 F.2d at 490.]

We conclude that the petitioners here did indeed maintain a position in the District Court which that tribunal adopted and which was inconsistent with the exclusion of the same income from the gross income of petitioners in 1966. We hold that the requirement of the maintenance of inconsistent positions in section 1311(b)(1) demands no more.

We find that the four prerequisites to relief under the mitigation provisions have been satisfied. Accordingly, petitioners' motion for summary judgment will be denied.

*An appropriate order will be entered.*