Estate of Abraham Goldstein, deceased, Anna Goldstein, Ellie Goldstein, and Ziona Kaplan, Executors, and Anna Goldstein v. Commissioner.
Estate of Goldstein v. Commissioner
Docket No. 304-62.
United States Tax Court
T.C. Memo 1963-258; 1963 Tax Ct. Memo LEXIS 86; 22 T.C.M. (CCH) 1293; T.C.M. (RIA) 63258; September 24, 1963
Samuel J. Foosaner, 11 Commerce St., Newark, N.J., for the petitioners. Fred F. Wolf, for the respondent. WITHEY
Memorandum Opinion WITHEY, Judge: A deficiency has been determined by the respondent in petitioner's income tax for 1950 in the amount of $12,356.34. The only issue for determination is whether after the expiration of the statutory period of limitations provided under section 275 of the Internal Revenue Code of 1939, respondent by *88 application of sections 1311-1314, inclusive, of the Internal Revenue Code of 1954 may by his deficiency determination correct an error in the 1950 return of Abraham Goldstein. All of the facts have been stipulated. Petitioners, aanna Goldstein, Ellie Goldstein, and Ziona Kaplan are the executors of the estate of Abraham Goldstein, deceased, having duly qualified as such in the Probate Court, District of Hartford, State of Connecticut. The petitioner Anna Goldstein is an individual. Petitioner Anna Goldstein resides at Hartford, Connecticut, and petitioners Ziona Kaplan and Ellie Goldstein reside at West Hartford, Connecicut. On or before March 15, 1951, Anna Goldstein and Abraham Goldstein filed an individual income tax return, Form 1040, for the calendar year 1950, with the district director for the district of Connecticut. During the year 1950, the A. & A. Corporation, a Connecticut corporation, was dissolved and its assets distributed to its stockholders in complete liquidation of the corporation. Petitioners received as part of the liquidation distribution of the assets of the A. & A. Corporation in the taxable year of 1950, certain renewal commissions arising from life insurance written by the employees of the *89 corporation, primarily, the decedent, Abraham Goldstein. The rights to these renewal commissions distributed to the petitioners as part of the liquidation distribution of assets in the A. & A. Corporation represented assets received by the petitioners in exchange for their stock. Petitioners, in their income tax return for 1950, omitted from gross income the fair market value of these renewal rights received in that year on the ground that such rights had no ascertainable value when received in 1950, and that the income derived therefrom should be treated as long-term capital gain, as received. In 1953 and 1954, all renewal commissions actually received were treated as capital gain on the income tax returns filed by the petitioners for said years. On June 19, 1956, within 3 years of the date on which petitioners' income tax returns for the taxable years 1953 and 1954 were required to be filed, the Commissioner issued to petitioners a statutory notice of deficiency, in which he determined that the renewal commissions received in 1953 and 1954 constituted ordinary income, and were not subject to capital gain treatment. In explaining his adjustment for 1953, the Commissioner stated: *90 (a) The taxpayers were stockholders of the A. & A. Corporation and upon dissolution of the said corporation acquired the right to receive renewal commissions on insurance policies written by the said corporation. As the corporate dissolution was a closed transaction it is held that the taxpayer did not sell or exchange the commissions, but on the contrary collected them, the income thereby realized constituted ordinary income and $15,887.29 is taxable as such within the meaning of Section 22(a) of the Internal Revenue Code of 1939. (b) The taxpayers reported the receipt of renewal commissions on insurance policies as capital gains, in accordance with the provisions of Section 117(b) of the 1939 Internal Revenue Code. It has been determined that receipts of renewal commissioners on insurance policies constitute ordinary income (see Item Adjustment (a) of this statement), therefore capital gains reported have been decreased in the amount of $7,943.65. A similar explanation was given with respect to the Commissioner's determination as to renewal commissions of $11,217.45 received in 1954. On or about September 17, 1956, petitioners filed with this Court a petition, Docket No. *91 64232, contesting the Commissioner's determination of the deficiency. In the said petition, the petitioners took the position that the renewal commissions were taxable as received as capital gain and not as ordinary income, since at the time of the liquidation these rights had no ascertained value. In defense of the Commissioner's determination, petitioners, in said petition, set forth an alternative ground, which was that if said renewal rights were susceptible of valuation in 1950, then such value, whatever it might be, was in any event greater than the actual amounts of commissions received prior to 1955, and, therefore, the renewal commissions received constituted a return of capital to the petitioners and did not represent taxable income to them in 1953 and 1954, in any manner. That proceeding was tried before this Court on April 14, 1958, and the record therein, by stipulation of the parties, has been made a part of the record herein. On March 18, 1960, the Court filed its Findings of Fact and Opinion. 33 T.C. 1032 (1960). In stating the issues to be decided there, the Court used the following language pertinent to the issue herein: 1. Whether certain rights *92 to insurance renewal commissions distributed to stockholders upon the complete liquidation of a corporation had an ascertainable fair market value at the time of distribution. 2. If so, what was the fair market value. After finding and determining that the rights to the renewal commissions had an ascertainable value at the time of distribution by the A. & A. Corporation in 1950 and that such value was $70,000, the Court in its Opinion stated: As to all such rights except those which came to Anna at Abraham's death, the parties are in agreement that if the liquidation transaction was closed in 1950 (and we have so held), then the renewal commissions actually received thereafter constituted ordinary income to the extent they exceeded the 1950 value determined above, and this computation will be made under Rule 50. Long after the expiration of the period of limitations upon the taxable year 1950 respondent seeks through the mitigation sections 1311-1314, inclusive, of the 1954 Code to now adjust petitioners' 1950 tax liability by the addition to gross income for that year on a capital gains basis the amount of $70,000 representing the fair market value of the insurance renewal *93 commissions' rights received by petitioners in dissolution of A. & A. Corporation in that year. The parties are in agreement as to the meaning and operation of these sections with the exception of section 1311(b)(1)(B), quoted in the margin. [1] They agree in other words that the facts here place this controversy within the circumstances of adjustment referred to in section 1312. They agree that adjustment of petitioners' 1950 tax liability is prevented by the operation of the statute of limitations. They also agree that there has been a determination as defined by section 1313(a)(1). There is no dispute here with respect to the related taxpayer issue. They also agree that if an adjustment were to be allowed, it would be assessed and collected in the same manner as a deficiency under section 1314. They disagree, however, that there has been adopted in the determination of the Tax Court a position maintained by the taxpayers with respect to whom the determination was made and that the position maintained by the taxpayers in that case is inconsistent with the erroneous exclusion or nonrecognition of capital gains as reported in their 1950 income tax return. Petitioners contend that the *94 determination of the Tax Court with respect to the years 1953 and 1954 was inconsistent with the position taken by them in their pleadings and that their pleadings in that case were entirely consistent with the position taken by them in excluding such capital gains in their 1950 return. Respondent, on the other hand, contends that the Tax Court in that case made a determination which was consistent with the alternative position taken by the taxpayers which, in turn, was inconsistent with their 1950 return. *95 It is now well settled that in order to avoid complete abrogation of the statute of limitations, the mitigation sections of the Code must be strictly construed and that the burden of proof with respect thereto is upon the party seeking application of those sections. The Commissioner here seeks such application, and we find that he has failed to sustain his burden of proof which, due to agreement of the parties with respect to all other provisions of the mitigation sections, is merely to establish that the position taken by petitioners upon the filing of their 1950 return is inconsistent with the position taken by them before the Tax Court in Estate of Abraham Goldstein, Docket No. 64232, 33 T.C. 1032 (1960), which latter position was upheld by the Tax Court. We think the record fails to sustain the respondent in either respect. It is clear, and in fact stipulated by the parties, that petitioners in their income tax return for 1950, in omitting from gross income the fair market value of the involved rights to renewal commissions on life insurance distributed to them on the liquidation of A. & A. Corporation, took the position that although the transfer to them of such *96 rights in distribution amounted to a capital transaction which would result in taxable capital gain, such capital gain was not then recognized inasmuch as the value of the bundle of such rights was at that time unascertainable. Petitioners' next position was taken, according to the record herein, on their filing of a petition in the Tax Court as a result of deficiencies determined by the respondent for the taxable years 1953 and 1954 which deficiencies were based upon the respondent's determination that the acquisition by petitioners of the rights to renewal commissions written by said corporation was a closed transaction during 1950, that no sale or exchange of such assets had taken place but, on the contrary, petitioners had proceeded to collect the commissions, and that such commissions as had been collected were ordinary income as distinguished from petitioners' 1950 and subsequent treatment of such collections as capital gains. In their petition filed in this Court, petitioners maintained primarily exactly the same position as they had occupied with respect to the taxability of such commissions in their 1950 return, i.e., they maintained that the renewal commissions as collected *97 were capital gains and not ordinary income in view of the fact that at the time of the corporate liquidation in 1950 the bundle of rights to these renewal commissions had no ascertainable fair market value. The record in Docket No. 64232 discloses that the Commissioner there took the position that the involved rights did have an ascertainable fair market value as of petitioners' acquisition of them in 1950 but nevertheless took the inconsistent position that, even so, all of the collections of such commissions subsequently made by petitioners were ordinary income to them. In answer to this contention, petitioners in their petition inserted a statement to the effect that if a fair market value was placed upon such rights as of their acquisition in 1950, then such value would be in excess of any collections of commissions so far made and that no tax would therefore be due until such time as their basis therein as represented by the $70,000 fair market value fixed by the Court had been recovered. It is upon this latter statement that respondent rests his argument that petitioners' position on their return for 1950 was inconsistent with their position taken before the Tax Court in Docket *98 No. 64232. It has been held that inconsistency of position does not result from an alternative position taken by a taxpayer with respect to the Tax Court's determination. Estate of A. W. SoRelle, 31 T.C. 272 (1958). We now so hold. The decision of the Court in its determination was inconsistent with the position taken by the taxpayers before the Court. This is true because by virtue of the statement made in the Court's Opinion, the parties agreed that if the dissolution and distribution was a closed transaction in 1950, then the commission collections would be ordinary income. The primary position taken by the taxpayers before the Tax Court, i.e., that the distributed renewal commission rights had no ascertainable fair market value on their distribution in 1950, was determined by the Court directly to the contrary. This alone, we think, makes inapplicable the provisions of sections 1311 through 1314. Nowhere is there any evidence in this record that petitioners have at any time agreed, contrary to the position taken in their 1950 return, that the renewal commission rights received by them in the dissolution of A. & A. Corporation had an ascertainable fair market value *99 at that time. The inconsistency in this case appears to be that of the respondent. He is the one seeking to now adjust a closed year, the return for which and for the years 1951 and 1952 he had accepted. It is implicit throughout the Congressional history of these sections that one seeking their application may not benefit by his own inconsistency. Decision will be entered for the petitioners. Footnotes
1. SEC. 1311. CORRECTION OF ERROR. * * *
(b) Conditions Necessary for Adjustment. - (1) Maintenance of an Inconsistent Position. - Except in cases described in paragraphs (3)(B) and (4) of section 1312, an adjustment shall be made under this part only if - * * *
(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made, and the position maintained by the Secretary or his delegate in the case described in subparagraph (A) or maintained by the taxpayer in the case described in subparagraph (B) is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.↩