JOHN BOLTEN, JR., AND INES BOLTEN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 24007-88.      Filed October 4, 1990.

*A. William Caporizzo,* for the petitioners.
*Barry J. Laterman* and *Maureen T. O'Brien,* for the respondent.

## OPINION

RAUM, *Judge:* The Commissioner determined a $108,900 deficiency in income tax for 1980 against petitioners, husband and wife. They resided in West Germany at the time the petition herein was filed. At issue is whether the mitigation provisions of sections 1311-1314[1] are applicable to lift the bar of the statute of limitations against assessment which had otherwise expired.[2] The facts have been stipulated.

Petitioners discovered a $904,900 embezzlement loss in 1976 which they claimed as a deduction on their return for that year. They thus incurred a $781,927 net operating loss (NOL) which, as stipulated by the parties, petitioners carried back or forward as follows:

| Taxable year | NOL deduction claimed |
| --- | --- |
| 1975 | $3,568 |
| 1977 | 56,691 |
| 1978 | 77,384 |
| 1979 | 175,303 |
| 1980 | 460,382 |
| 1981 | 8,599 |
| Total | 781,927 |

The $460,382 portion of the 1976 net operating loss which petitioners thus carried forward and deducted on their 1980 return, here involved, completely eliminated all tax for that year.

[1] Unless otherwise indicated, all section references herein are to the Internal Revenue Code as in effect and applicable for the years involved.

[2] The parties have agreed that, depending upon the outcome of the mitigation provisions issue, a dispute with respect to a charitable deduction will be resolved by allowing an additional $5,500 for 1980 if the Court should find for respondent and disallowed if the Court should find for petitioners.

Subsequent to the filing of returns for the foregoing years, the parties agreed that petitioners were not entitled to certain deductions relative to investments in the partnerships Harrison Associates and Mona Hill Associates for 1977 and 1978 and in a diamond mining venture known as Imperial Finance for 1978 and 1979, which had been claimed on their returns for these years. The parties entered into a timely settlement of these issues whereby petitioners conceded all issues and the IRS allowed a deduction of cash invested in Harrison and Mona Hill. As a consequence of the foregoing agreed adjustments, the taxable income for each of the years 1977-79 was substantially increased, and the NOL deductions for those years required to offset the revised amounts of taxable income were correspondingly increased, thereby reducing the amount of NOL deductions available for carryover beyond 1979.

The parties thereupon entered into a closing agreement under section 7121 dated May 9, 1988,[3] in which it was agreed:

(1) That taxpayers have consistently claimed the net operating loss deductions on the basis of their returns as filed under the ordering rules of Internal Revenue Code Section 172.

(2) That taxpayers are entitled to the following net operating loss deductions on their income tax returns as the result of the adjustments to adjusted gross income and taxable income for the calendar years 1977, 1978 and 1979:

| Taxable year | Allowable deduction |
|---|---|
| 1975 | $3,568 |
| 1977 | 140,023 |
| 1978 | 249,782 |
| 1979 | 325,473 |
| Total | 718,846 |

(3) That as a result of the increases to adjusted gross income and taxable income for the calendar years 1977, 1978 and 1979 and the reordering of net operating loss deductions as noted above, the amount of net operating loss deductions available for the calendar years 1980 and 1981 are reduced to $63,081 and $-0-, respectively.

(4) That absent a determination by a court of competent jurisdiction or by agreement of the parties that the mitigation provisions are applicable under Internal Revenue Code Sections 1311 through 1314, inclusive, the

---

[3]The stipulation of the parties describes the closing agreement as dated May 8, 1988. However, the closing agreement itself is a stipulated exhibit in the record, and it shows that the signature on behalf of the Commissioner was dated May 9, 1988.

time for assessing any tax for the calendar years 1980 and 1981 resulting from the reordering of the net operating loss deductions has expired under Internal Revenue Code Section 6501.

The normal period of limitations for assessment for 1980, as extended pursuant to section 6501, had expired on June 30, 1985. We are accordingly faced with the question whether the mitigation provisions of sections 1311 through 1314 lift the bar of the statute of limitations for assessment of 1980 tax as a result of the reordering of the net operating loss deductions required by the closing agreement.

The mitigation provisions were first enacted as section 820 of the Revenue Act of 1938, ch. 289, tit. V, 52 Stat. 581, and were included, successively, in the 1939 Code as section 3801 and in the 1954 Code and the 1986 Code as sections 1311-1314.[4] The provisions now in effect reflect certain amendments to the original 1938 provisions,[5] but to the extent that they relate to the present case the basic provisions involved remain substantially the same as enacted in 1938. Pertinent portions of sections 1311 through 1314 in effect here are set forth in the margin.[6]

---

[4]The 1954 Code originally contained a fifth section, namely, sec. 1315 dealing with the period of transition from the 1939 Code to the 1954 Code. It was repealed by sec. 1901(a)(143) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1788.

[5]The provisions were amended by the Technical Changes Act of 1953, ch. 287, tit. II, sec. 211, 67 Stat. 625, and were again amended by the 1954 Code.

[6]SEC. 1311. CORRECTION OF ERROR.

(a) GENERAL RULE.—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, * * * then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

(b) CONDITIONS NECESSARY FOR ADJUSTMENT.—

(1) MAINTENANCE OF AN INCONSISTENT POSITION.—Except in cases described in paragraphs (3)(B) and (4) of section 1312 [not involved here], an adjustment shall be made under this part only if—

\* \* \* \* \* \* \*

(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made,

and the position maintained by the * * * taxpayer in the case described * * * in subparagraph (B) is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

\* \* \* \* \* \* \*

SEC. 1312. CIRCUMSTANCES OF ADJUSTMENT.

The circumstances under which the adjustment provided in section 1311 is authorized are as follows:

\* \* \* \* \* \* \*

Turning to the facts of the present case, we begin with a $781,927 net operating loss incurred in 1976 which can be carried back to each of the preceding 3 years, section 172(b)(1)(A), as needed to reduce taxable income, and the remainder then carried forward to years beginning with 1977, as needed similarly to reduce taxable income in such later years, section 172(b)(1)(B), until it has been fully absorbed or until the right to carry it forward has expired.[7]

After taking into account that portion of the 1976 NOL already used up for the carryback period and the carryovers for 1977, 1978, and 1979, required to offset gross income and reduce taxable income reported by petitioners on their returns for those years, there still remained a sufficient amount of the 1976 NOL to offset petitioners' reported 1980 gross income and reduce their taxable income to the point that their tax for 1980 was completely eliminated. Accord-

---

(2) DOUBLE ALLOWANCE OF A DEDUCTION OR CREDIT.—The determination allows a deduction or credit which was erroneously allowed to the taxpayer for another taxable year or to a related taxpayer.

\* \* \* \* \* \* \*

SEC. 1313. DEFINITIONS.
   (a) DETERMINATION.—For purposes of this part, the term "determination" means—

\* \* \* \* \* \* \*

   (2) a closing agreement made under section 7121;

\* \* \* \* \* \* \*

SEC. 1314. AMOUNT AND METHOD OF ADJUSTMENT.
   (a) ASCERTAINMENT OF AMOUNT OF ADJUSTMENT.—In computing the amount of an adjustment under this part there shall first be ascertained the tax previously determined for the taxable year with respect to which the error was made. \* \* \*

\* \* \* \* \* \*

There shall then be ascertained the increase or decrease in tax previously determined which results solely from the correct treatment of the item which was the subject of the error \* \* \*. A similar computation shall be made for any other taxable year affected, or treated as affected, by a net operating loss deduction (as defined in section 172) \* \* \* determined with reference to the taxable year with respect to which the error was made. The amount so ascertained \* \* \* for each taxable year shall be the amount of the adjustment for that taxable year.
   (b) METHOD OF ADJUSTMENT.—The adjustment authorized in section 1311(a) shall be made by assessing and collecting, \* \* \* the amount thereof in the same manner as if it were a deficiency determined by the Secretary with respect to the taxpayer as to whom the error was made \* \* \* for the taxable year or years with respect to which an amount is ascertained under subsection (a), and as if on the date of the determination one year remained before the expiration of the periods of limitation upon assessment \* \* \* for such taxable year or years. \* \* \*

[7]The time provided in sec. 172(b)(1)(B) during which a loss may be carried over was changed from 5 years to 7 years for loss years ending after Dec. 31, 1975, by sec. 806(a) of Pub. L. 94-455, 90 Stat. 1598. That period was subsequently enlarged to 15 years by sec. 207(a)(1) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 225, effective for loss years ending after Dec. 31, 1975.

ingly, petitioners did in fact carry forward $460,382 as a 1980 NOL, namely, that portion of the remaining 1976 NOL required to wipe out their tax for 1980. However, as a result of the May 9, 1988, closing agreement, increasing the amounts of the 1976 NOL allowable and used up for 1977, 1978, and 1979, there remained only $63,081 of the 1976 NOL that was available to petitioners for carryover to 1980,[8] the year now before us. It is thus plain that petitioners are not entitled under section 172 to an NOL carryover deduction for 1980 in excess of $63,081, and the deficiency before us relates exclusively to the decrease of the $460,382 deduction taken by petitioners for 1980 to the correct amount of $63,081. There can be no reasonable doubt that the deficiency thus determined must be sustained if the mitigation provisions lift the bar of the statute of limitations, which otherwise prevents the reopening of the closed year 1980 for this purpose. We hold that the mitigation provisions of sections 1311-1314 are applicable here.

Sections 1311 through 1314 constitute the entire part II of subchapter Q of chapter 1 of the income tax subtitle A, of the Internal Revenue Code. Part II is captioned "Mitigation of Effect of Limitations and Other Provisions." In the aggregate, sections 1311 through 1314 set forth a highly complicated and confusingly interrelated set of provisions authorizing the correction of error which is otherwise prevented by operation of law, e.g., the expiration of the statutory period of limitations for assessment. Considerably oversimplified but nevertheless sufficiently accurate for present purposes, sections 1311-1314 were designed to prevent a windfall, in specified circumstances, either to the taxpayer or to the Government arising out of the treatment of the same item in a manner inconsistent with its erroneous treatment in a closed year. Thus, provision is made to correct an error in the closed year where, for example, the same item was erroneously included or ex-

---

[8]Actually, a computation of the 1977-79 increases discloses that they are in the aggregate amount of $405,900, and that the difference between $460,382 and $405,900 is $54,482, not $63,081. However, the seeming discrepancy is explained by the fact that petitioners had carried over $8,599 of the NOL (the final segment thereof) to 1981, and that petitioners' 1980 income could absorb in 1980 the entire amount of the 1976 NOL correctly remaining after 1979 ($54,482 + $8,599 = $63,081).

cluded from income or where the same item was allowed or disallowed as a deduction in a barred year. The authorized mechanism for correction is an "adjustment," a term of art the meaning and scope of which emerges from the mitigation provisions of sections 1311-1314.

We note at the outset that the mitigation provisions are written with great specificity and are not formulated to provide general equitable relief to taxpayers and the Government or to cover every situation involving a double tax benefit or detriment arising out of inconsistent treatment. *B.C. Cook & Sons, Inc. v. Commissioner,* 65 T.C. 422, 427-428 (1975), affd. 584 F.2d 53 (5th Cir. 1978); cf. H. Rept. 2330, 75th Cong., 3d Sess., 56 (1938). Also, since the party relying upon these provisions is invoking an exception to the basic statute of limitations, that party has the burden of establishing the application of the exception in the case at hand. *Yagoda v. Commissioner,* 39 T.C. 170, 178 (1962), affd. 331 F.2d 485 (2d Cir. 1962); *MacDonald v. Commissioner,* 17 T.C. 934, 940 (1951). Nevertheless, as was held in *United States v. Rosenberger,* 235 F.2d 69, 73 (8th Cir. 1956), although "one claiming the benefits of [the mitigation provisions] must assume the burden of proving the existence of the prerequisites to [their] applicability * * * [that] does not mean that the statute should be so strictly or narrowly interpreted as to defeat its apparent purpose." And the court went on to accept as that apparent purpose the statement in *Gooch Milling & Elevator Co. v. United States,* 111 Ct. Cl. 576, 78 F. Supp. 94, 100 (1948), that Congress intended "to provide a fair and workable formula under which taxpayers and the Government would be given relief from the unfair and unjust results occasioned by corrections, by final determinations, of errors of either the taxpayer or the Commissioner of Internal Revenue, or both, in connection with the proper treatment of items affecting taxable income and tax liability in more than one year." Further in this connection, we think it pertinent to set forth in some detail the following explanatory statement of Congressional purpose taken from the report of the Senate Finance Committee accompanying the bill that was enacted in 1938 (S. Rept. 1567, 75th Cong., 3d Sess., 49-50 (1938)):

In each [of the examples], under existing law, an unfair benefit would have been obtained by assuming an inconsistent position and then taking shelter behind the protective barrier of the statute of limitations. Such resort to the statute of limitations is a plain misuse of its fundamental purpose. The purpose of the statute of limitations to prevent the litigation of stale claims is fully recognized and approved. But it was never intended to sanction active exploitation, by the beneficiary of the statutory bar, of opportunities only open to him if he assumes a position diametrically opposed to that taken prior to the running of the statute. * * * Legislation has long been needed to supplement the equitable principles applied by the courts and to check the growing volume of litigation by taking the profit out of inconsistency, whether exhibited by taxpayers or revenue officials and *whether fortuitous or the result of design.*

The legislation here proposed is based upon the following principles:

(1) To preserve unimpaired the essential function of the statute of limitations, corrective adjustments should (a) never modify the application of the statute except when the party or parties in whose favor it applies shall have justified such modification by active inconsistency, and (b) under no circumstances affect the tax save with respect to the influence of the particular items involved in the adjustment.

(2) Subject to the foregoing principles, disputes as to the year in which income or deductions belong, or as to the person who should have the tax burden of income or the tax benefit of deductions, should never result in a double tax or a double reduction of tax, or an inequitable avoidance of tax.

\* \* \* \* \* \* \*

(4) Corrective adjustments should produce the effect of attributing income or deductions to the right year and the right taxpayer, and of establishing the proper basis. [Emphasis supplied.]

It seems clear to us that this case is fairly covered by the mitigation provisions. The parties are in agreement that the closing agreement is a "determination" as defined in section 1313(a)(2), and that if the mitigation provisions are applicable the amount of the "adjustment" was correctly computed under section 1314. Also, the parties are further in agreement that the authorized correction of the inconsistent treatment must relate to the same "item." In our judgment, that item involves the 1976 NOL and the portions thereof that are used up as it is carried from year to year. More specifically, it involves that portion, $460,382, that was carried over to 1980. However, the authoritative "determination," i.e., the closing agreement, by increasing the amounts of the 1976 NOL carryover to 1977, 1978, and

1979, makes clear that the amount of the carryover (of the same 1976 NOL) to 1980 is only $63,081. In short, the closing agreement "determined" increases in the 1977-79 NOL carryover losses, and such increases were the very items, or rather portions of the same item, that made erroneous the $460,382 carryover to 1980 to the extent that it exceeded $63,081. The adjustment authorized by section 1314 does no more than recompute petitioners' 1980 tax so as to eliminate the excessive (erroneous) portion of the 1980 NOL carryover deduction, and the Commissioner's determination of deficiency simply incorporates that adjustment. We think it is sound. However, petitioners, in a competently crafted brief, have argued that sections 1311-1314 are not applicable here. Some of their contentions have already been considered above to some extent, and we now proceed to give such further consideration thereto and to deal with such of their additional contentions as we think merit discussion.

Petitioners contend first that this case fails to come within section 1312(2), which covers a "determination [that] allows a deduction * * * which was erroneously allowed to the taxpayer for another taxable year." They focus on the past tense of the word "was." Thus, they argue in their brief that section 1312(2) is concerned only with "a deduction which was erroneous *before* the determination is made that the deduction is properly allowed in another taxable year." (Emphasis in original.) We think that although the point may be superficially appealing, it is nevertheless unsound.

The NOL deduction originally taken by petitioners for 1980 was then correct only in an arithmetic sense. It was legally erroneous because it was based upon the faulty assumption that correct portions of the 1976 NOL had been absorbed in the years 1977-79. The 1988 "determination" (the closing agreement) makes clear that the 1977-79 segments of the 1976 NOL taken on the returns for those 3 years *were not* correct, with the result that we have here a double allowance of a deduction within the scope of section 1312(2). To be sure, they were not correct because petitioners had understated their taxable income for those years by taking improper deductions with respect to certain other

items, and had thus used considerably smaller amounts of the 1976 NOL carryover to offset such understated taxable income for 1977-79. But it should be a matter of no consequence *why* the NOL carryovers that they used for those years were less than the amounts allowable and in fact allowed by the closing agreement. The point is that, for whatever reason, greater amounts of the NOL carryover were allowable to them for 1977-79 and the remaining amount of that carryover available to reduce taxable income for the period beyond 1979 was thus reduced by precisely the amount of the difference.

Petitioners' reliance on two cited cases is misplaced. One of them, *Dubuque Packing Co. v. United States,* 126 F. Supp. 796, 806-807 (N.D. Iowa 1954), affd. 233 F.2d 453 (8th Cir. 1956), involved a change in an inventory accounting method which a Treasury Decision made available retroactively to the taxpayer at its option. The taxpayer exercised the option and sought deductions allowable under the revised method for certain earlier years. A qualifying "determination" resulted in a decision to the effect that there was a deficiency for one of those years (an open year) and consistently therewith ruled that there were overpayments for the two preceding years which, however, were disallowed on the ground that those two earlier years were barred by limitations. The taxpayer, in reliance upon the mitigation provisions, then brought suit to recover taxes paid for the barred years. In holding the mitigation provisions inapplicable, the court stressed the fact that the items were correctly treated under the accounting system that was controlling at the time the returns were filed, an accounting system that was subsequently modified retroactively. In sharp contrast, the present case involves an NOL carryover to 1980 (the year now otherwise closed) that was not legally correct when petitioners filed their return for that year, although the extent to which it was not legally correct may not have been precisely determinable at that time.

The second case, *First National Bank of Philadelphia v. Commissioner,* 18 T.C. 899, 903 (1952), affd. 205 F.2d 82 (3d Cir. 1953), was concerned with the taxpayer's attempted treatment of an item in a prior closed year upon the basis

of the correct treatment of a comparable, but nevertheless entirely different, item in the section 1313 determination involving a later year. That case has hardly any substantial persuasive force here, where we are concerned with the same item throughout, namely, the 1976 NOL as carried back and forward until fully absorbed or terminated.

Petitioners' position based on their insistent emphasis upon the word "was" in section 1312(2) must be rejected in the light of the caution of the Eighth Circuit in *United States v. Rosenberger*, 235 F.2d at 73, already quoted above, to the effect that although "one claiming the benefits of * * * [the mitigation provisions] must assume the burden of proving the existence of the prerequisites to [their] applicability * * * [that] does not mean that the statute should be so strictly or narrowly interpreted as to defeat its apparent purpose." Notwithstanding the narrowly contrived language in the closing agreement, the fact remains that the parties did agree that "the amount of the net operating loss deductions available for the calendar years 1980 and 1981 are reduced to $63,081 and $-0-, respectively." Reasonably read in the context of this case, that language plainly tells us that the $460,382 NOL carryover deduction taken by petitioners in 1980 "was erroneously allowed" for that year to the extent that it exceeded $63,081. To argue otherwise is merely to play games with words. The statute does not require that the error be characterized as such prior to the determination.

Petitioners contend further that the deduction allowed in the determination for 1977-79 is not the same as the 1980 deduction which the Commissioner seeks to modify. They argue that the correction authorized by the mitigation provisions may be made only when the determination involves the same "item." We note initially that section 1312(2) relating to a double allowance of a deduction does not use the word "item" in contrast to section 1312(1), which is concerned with "double inclusion of an *item* of gross income." (Emphasis supplied.) However, the Commissioner has agreed on brief that the same "item" must be involved, and we likewise proceed upon the same basis. See *B.C. Cook & Sons, Inc. v. Commissioner*, 65 T.C. at 432 (Tannenwald, J., concurring).

We have already dealt with this point to some extent earlier in the opinion, but we now undertake to give further consideration to it. Petitioners argue that the "items of adjustment" for 1977-79 consisted of "the disallowance of the losses from Harrison Associates, Mona Hill Associates and Imperial Finance, * * * and that their 1980 net operating loss deduction is adjusted not because their 1977 through 1979 net operating loss deductions were adjusted, but rather because the Petitioners' taxable income for the taxable years 1977 through 1979 was adjusted." They thus urge us to conclude that the 1980 deduction is not the same "item" as the 1977-79 "items" involved in the determination. In our judgment, petitioners misconceive the nature of the "item" involved.

The item involved is the 1976 NOL deduction to the extent that it is allowable and needed as a deduction from gross income of each year to which it is carried until fully absorbed or terminated. It is of no consequence what factors may be involved in any particular year that give rise to the computation of a taxpayer's income prior to determining how much of the NOL carryback or carryover must be absorbed in that year. The point here is that the increases in the 1977-79 carryover deductions, regardless of what led to such increases, represented the very amount of the excess of the 1976 NOL carryover beyond 1979 claimed by petitioners. The 1980 NOL deduction here involved, unless corrected as permitted by the mitigation provisions, would indeed result in double deductions of the same item— i.e., (1) the 1976 NOL carryover deduction of $460,382 taken by petitioners for 1980 to the extent that it exceeded $63,081, and (2) the 1976 NOL carryover deductions for 1977-79 to the extent that they reflect the increases in the same 1976 NOL carryover to those years as required by the determination.[9]

In support of their position, petitioners rely upon section 172(b)(2)[10] relating to the method of determining the

---

[9]See *supra* note 8.

[10]SEC. 172. NET OPERATING LOSS DEDUCTION.

(b) NET OPERATING LOSS CARRYBACKS AND CARRYOVERS.—

\* \* \* \* \* \* \*

(2) AMOUNT OF CARRYBACKS AND CARRYOVERS.—Except as provided in subsection (g), the entire amount of the net operating loss for any taxable year (hereinafter in this section

amount of a net operating loss available to be carried from any taxable year to other years. In substance, they state quite correctly that section 172(b)(2) does not define a carryover to a particular year in terms of the net operating loss carryover deduction taken for prior years. Of course, as they also point out and as was held in *United States v. Foster Lumber Co., Inc.,* 429 U.S. 32 (1976), the amount of a taxpayer's "unused" net operating loss carryover is theoretically not relevant under section 172(b)(2) in determining the amount of the carryover to a year subsequent thereto. What is technically relevant in terms of the language of section 172(b)(2) is the amount of the taxpayer's taxable income for the particular year, because it is the amount of taxable income that governs the determination of the amount of carryover, if available, that is required to fully eliminate the tax for such carryover year. But that formulation is merely a statement in different words of the more familiar formulation in terms of the amount of the NOL deduction *properly* or *correctly* usable to ascertain the remaining amount available for carryover to subsequent years. To attempt to make anything turn upon that difference in formulation is, in our view, a mere quibble. We think that Congress hardly intended anything to turn upon such a hypercritical reading of the statute. However one may play with the words of the statute, when the fog has lifted, what is left is that the portion of the original NOL available for carryover to a later year is what remains after subtracting from the original NOL the sum of those portions which, if needed, were allowable (not necessarily in fact used) to eliminate the tax for each intervening prior year. That is all that is involved in this case.

In an effort to bolster their position, petitioners rely upon various rulings and judicial decisions. We have already discussed some of those decisions earlier in this opinion. None of the materials relied upon by petitioners, however, deals with net operating loss carrybacks or carryovers. To be sure, some of them involve situations that are superfi-

---

referred to as the "loss year") shall be carried to the earliest of the taxable years to which (by reason of paragraph (1)) such loss may be carried. The portion of such loss which shall be carried to each of the other taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior taxable years to which such loss may be carried. * * *

cially similar. But they must be read very critically, because a close examination of those rulings and decisions discloses their inapplicability here. Indeed, in this field, a journey through such materials is like picking one's way through a mine field.

Perhaps the closest and most appealing example is found in Rev. Rul. 70-7, 1970-1 C.B. 175. There, a taxpayer's tract of land was subdivided into lots, and, as required by section 1.61-6(a), Income Tax Regs., he apportioned the basis of the tract among the lots. Later, after eight of the lots had been sold and the period of limitations within which to assess deficiencies in the year or years of the sales had expired, the IRS determined that the basis that the taxpayer had used for the tract was too high. In question was whether the mitigation provisions were applicable to assess deficiencies in tax attributable to understatements of gain on sale of the eight lots during the closed years. The ruling states that "the prior items barred by the statute of limitations (the gain or loss upon the sale of the eight lots) are not the same as the items involved in the subsequent determination (the 1958 cost basis of the entire tract)." 1970-1 C.B. at 176. This result was required by section 1.61-6(a), Income Tax Regs., which provides in pertinent part that the "basis of the entire property shall be equitably apportioned among the several parts" and that the "sale of each part is treated as a separate transaction." From the time the property was subdivided, the regulations required these lots to be treated as separate items. The net operating loss deduction involves an entirely different situation. The loss is not required to be apportioned but stays in a pool until it can be fully absorbed or the time allotted by the statute expires.

Another type of situation is the one involving inventories, accounts receivable, accounts payable, etc., where a determination in respect of an open year discloses that the treatment of such entries in the taxpayer's books was erroneous and that consistency of treatment would require revision of the comparable book entries used in the computation of the amount of taxable income for the closed years. Such a case is *MacDonald v. Commissioner*, 17 T.C. 934 (1951), relied upon by petitioners. The mitigation provisions relied upon there by the Commissioner were held inapplica-

ble. In reaching that result the Court emphasized the Commissioner's failure or inability to trace the changes made in the determination back into the closed years. Accordingly, the individual items involved in determining the inventories, etc., of the closed years, although similar, were not or were not shown to be the same as the corresponding "items" of those entries in the open year that was the subject of the determination.[11] Thus, *MacDonald* differs substantially from the present case which involves *the same net operating loss* that is carried from year to year until exhausted or terminated.

Petitioners have not called our attention to even a single case involving the mitigation provisions as applied to net operating loss carrybacks and carryovers. The materials that they have relied upon are pertinent only by analogy, but we have found each analogy to be defective as an authoritative guide here. Our own research has turned up one relevant case involving the mitigation provisions as applied to carrying a net operating loss deduction to other years. *Plauche-Locke Securities, Inc. v. United States,* 29 AFTR 2d 911, 72-1 USTC par. 9278 (W.D. La. 1972). That case supports the result that we reach here. There, the taxpayer sustained a net operating loss in 1965, but instead of applying it first as a carryback to 1962, as required by section 172, it carried forward a one-eighth portion of that NOL to 1967, an amount apparently sufficient to eliminate its 1967 tax. Thereafter, when the statute of limitations prevented reopening 1962, a qualifying "determination" disallowed the carryover deduction to 1967 on the ground that the 1965 NOL should first have been carried back to 1962. The taxpayer then sought to carry the entire 1965 NOL back to 1962 in reliance upon the mitigation provisions. Citing *Gooding v. United States,* 164 Ct. Cl. 197, 326 F.2d 988 (1964), a somewhat similar case which, however, did not involve net operating loss deductions, the court in *Plauche-Locke* held that the mitigation provisions were applicable. In so holding, the court necessarily accepted the position

---

[11]In the case of inventories, the line between those that represent the same item and those that do not was sharply drawn in *Estate of SoRelle v. Commissioner,* 31 T.C. 272, 275 et seq. (1958). It was there held that the closing inventory for 1945 represented the same item as the opening inventory for 1946, but it was also held at the same time that the opening inventory for 1945 was not the same item.

that the same "item" was involved. However, the court limited the 1962 carryback to the one-eighth portion of the 1965 NOL loss already administratively allowed by the IRS.[12]

The circumstances in the present case are comparable. Here, the year of the "erroneous allowance" is the closed year 1980, when petitioners took a $460,382 NOL carryover deduction from 1976. As previously indicated, that deduction was erroneous to the extent that it exceeded $63,081. Furthermore, the "determination" (the closing agreement) allowed petitioners increased portions of the 1976 NOL for each of the years 1977, 1978, and 1979. These increased amounts were duplicated in the portion of the same 1976 NOL erroneously carried over by petitioners as a deduction in 1980. This situation is covered by section 1312(2), which permits an adjustment provided that the conditions of section 1311(b)(1)(B) are satisfied.

To be sure, in specifying the conditions necessary for adjustment, section 1311(b)(1)(B) refers to "a position *maintained* by the taxpayer" (emphasis supplied) which is inconsistent with the erroneous allowance. And the record fails to show that petitioners affirmatively sought the increases in the 1977-79 NOL deductions. Whether the mitigation provisions are therefore inapplicable is an issue on which the cases do not appear to be in harmony with one another. Compare, e.g., *Yagoda v. Commissioner*, 331 F.2d 485, 490 (2d Cir. 1964), *Chertkof v. Commissioner*, 649 F.2d 264, 267-269 (4th Cir. 1981), and *Albert W. Priest Trust v. Commissioner*, 6 T.C. 221, 226 (1946), with *Heineman v. United States*, 183 Ct. Cl. 17, 391 F.2d 648, 651-652 (1968), and *Estate of SoRelle v. Commissioner*, 31 T.C. 272, 274-275 (1958). However, petitioners have not presented or argued

---

[12]Another case dealing with the mitigation provisions as applied to NOL carrybacks and carryovers is *Budd Co. v. Commissioner*, 33 T.C. 813 (1960), which in our judgment is too remote from the present controversy to be of any assistance here. That case involved a 1946 net operating loss, its carryback to 1944, and the carryover to 1947 taken by the taxpayer. The carryback to 1944 affected both the 1944 income tax and the interrelated 1944 excess profits tax. The excess profits tax provisions were repealed in 1945. A District Court's determination with respect to the 1947 carryover appeared to be theoretically inconsistent with the taxpayer's position as to 1944. The Commissioner thereupon sought to reopen 1944, which had become a closed year. The Court concluded, after an examination of the complicated interrelationship between the ordinary income tax and the excess profits tax, that the carryback to 1944 was strictly correct under the governing statutory provisions. It therefore held that since there was no error, the mitigation provisions were inapplicable to reopen 1944. That case is hardly of any help here, where the carryovers taken by petitioners on their returns were erroneous.

the point that the "maintained" requirement was not satisfied,[13] and we accordingly do not consider the question as to how we should proceed along the thorny and confusing path of the decided cases. In an attempt to support their position that the NOL deduction here involved was not the same "item" and that the mitigation provisions do not permit the reopening of 1980, petitioners also present an ingenious argument based upon section 1314(a). They conjure up a hypothetical scenario calculated to establish that a portion of section 1314(a) would have been "superfluous" if the Commissioner's position were accepted here. Their point is intricate and convoluted, and perhaps the best way of setting it forth is to quote directly from their brief:

Section 1314(a) of the Code allows an adjustment to the net operating loss deduction in a closed year which is determined with reference to the taxable income of that or other closed years, when the taxable income of such closed years is changed by the application of the mitigation provisions. This provision would be applicable to the Petitioners if the adjustments made in their 1977, 1978 and 1979 taxable years were made as a result of the application of the mitigation provisions. In that case, the Commissioner would have been entitled to change the Petitioners' 1980 net operating loss deduction, because it is determined by reference to barred years which were adjusted pursuant to the mitigation provisions.

This portion of Section 1314 of the Code would not be necessary if a net operating loss deduction in one year were the same item of deduction as the net operating loss deduction in a subsequent year. If they were the same items of deduction, the Commissioner could use the mitigation provisions to avoid any bar of assessment by the statute of limitations for all years subsequent to the year in which a net operating loss deduction was changed as the result of the correction of an error. If the mitigation provisions could apply in such a case, this part of Section 1314(a) of the Code and Treasury Regulation Section 1.1314(a)-2 would be superfluous. Generally, a statutory provision must be construed in a manner which does not render other provisions of the statute superfluous. *Jackson v. Kelly,* 557 F.2d 735, 740 (10th Cir. 1977); *United States v. Blasius,* 397 F.2d 203, 207 (2d Cir. 1968). * * *

---

[13]It is quite true that petitioners' brief did state in a different connection that by "accepting" the Commissioner's redetermination as to 1977-79, they merely "acquiesced" in his position. That statement was made in connection with petitioners' contention that "The closing agreement was not inconsistent with the prior erroneous allowance of the petitioners' 1980 net operating loss deduction"—a contention that we dealt with *supra* at pp. 405-407. But nowhere did their brief directly or clearly make the argument that sec. 1311(b)(1)(B) was inapplicable on the ground that the "maintained" requirement was not satisfied.

In our judgment, the argument is faulty. Regardless of whether there may be some overlap in these complicated interrelated provisions of sections 1311-1314, the very portion of section 1314(a) that petitioners say would be "superfluous" has a wide sphere of operation wholly independent of their hypothetical scenario, and therefore cannot be labeled as "superfluous." A single example will suffice to illustrate the point:

Suppose that a taxpayer took an erroneous deduction, say a bad debt, in 1982, and it is later held in a "determination," when 1982 and 1983 were barred years, that the bad debt deduction (the same "item') was properly taken in 1984. And suppose further that the erroneous 1982 bad debt loss deduction had produced an NOL for 1982 which had then been carried back to the preceding three years and then ultimately carried over to 1983. Finally, suppose that the taxpayer's income for 1984 was sufficient to absorb the entire bad debt deduction. Accordingly, in computing the section 1314(a) "adjustment," it would become necessary not only to compute the 1982 tax with the erroneous deduction eliminated, but also to compute the effect that eliminating the carrybacks and carryover would have on the taxpayer's 1979-1981 and 1983 taxes.

Although, in view of the complexity of the statutory provisions, the example of necessity must unfortunately be complex itself, it nevertheless exposes the unsoundness of petitioners' contention. It demonstrates that section 1314(a) is operative in cases wholly apart from the more unusual case like the present one which involves an "item" which is itself an NOL. The pertinent provisions of section 1314(a) certainly could not be labeled "superfluous" as petitioners have attempted to do in their intricate chain of reasoning calculated to establish that the mitigation provisions are inapplicable here. We reject their contention based upon section 1314(a).

Petitioners have made various other contentions. We have given thoughtful consideration to them, but find them unpersuasive. The bottom line here is that we have a double allowance of a deduction covered by section 1312(2)—the deduction of the increased portion of the 1976 NOL allowed for 1977-79 by the section 1313 "determination" and the erroneous deduction of the same portion of the 1976 NOL in 1980. Regardless of other possible statutory or nonstatutory alternatives, the mitigation provisions were designed to provide a remedy in such circumstances. We repeat for the

second time the Eighth Circuit's statement in *United States v. Rosenberger,* 235 F.2d at 73, that although "one claiming the benefits of * * * [the mitigation provisions] must assume the burden of proving the existence of the prerequisites to [their] applicability * * * [that] does not mean that the statute should be so strictly or narrowly interpreted as to defeat its apparent purpose."

*Decision will be entered for the respondent.*