T.C. Memo. 1997-273

UNITED STATES TAX COURT

GRANT K. HAGESTAD, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14920-95.                    Filed June 17, 1997.

Jon T. Flask, for petitioner.

Warren P. Simonsen, for respondent.

MEMORANDUM OPINION

TANNENWALD, Judge:  Respondent determined a deficiency of
$123,586.00 in petitioner's Federal income tax for the 1987
taxable year, and increased interest under section 6621(c)[1] of
$31,027.  After concessions by the parties, the issue for

_____

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the taxable years in
issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

decision is whether respondent may adjust petitioner's 1987 income under the mitigation provisions found in sections 1311 to 1315.

## Background

This case was submitted fully stipulated under Rule 122. The stipulation of facts and exhibits are incorporated herein by this reference and found accordingly.

At the time the petition was filed in this case, petitioner resided in Carson City, Nevada. Petitioner timely filed a Federal income tax return for 1987, subsequent to a valid extension, on July 18, 1988. Respondent mailed a statutory notice of deficiency to petitioner on May 12, 1995, for the 1987 taxable year (the 1995 notice of deficiency).

During all relevant periods, petitioner was a cash-basis taxpayer. During 1986, petitioner purchased an interest in certain computer equipment for $135,000 cash and a note for the balance of his $1,000,000 purchase price. The equipment was then leased to a third party. Petitioner claimed deductible losses from the leasing of the computer equipment (the computer leasing deductions (CLDs)) in the following amounts:

| Year | Amount |
|------|--------|
| 1986 | $200,250 |
| 1987 | 321,002 |
| 1988 | 51,972 |

On March 3, 1991, respondent issued a statutory notice of deficiency for the taxable years 1986 and 1988 (the 1991 notice of deficiency), based on the disallowance of the CLD's for 1986, 1987, and 1988 and the exclusion of a separate item of $360,000 of income from the 1987 taxable year and its inclusion in 1986. Because the $360,000 exclusion exceeded the disallowed $321,002 CLD, the 1991 notice of deficiency did not result in a deficiency for 1987, but rather in an overassessment, no part of which, however, was ever paid by respondent. Petitioner filed a protective refund claim with respect to this overassessment, as to which no further action was taken by petitioner, and which was rejected by respondent as part of the 1995 notice of deficiency.

The issue of the CLD's was resolved by settlement. The parties agreed on September 18, 1992, by a Stipulation of Agreed Adjustments (the 1992 stipulation) that, in 1986, only $135,000 of the $200,250 CLD would be allowed, and the remaining $65,250 would be disallowed and suspended in accordance with the "at risk" rules under section 465. The $51,972 CLD for 1988 was disallowed in full, and the loss was also suspended in accordance with the "at risk" rules. Since the taxable year 1987 was not before the Court, the stipulation was silent as to the treatment of the 1987 CLD of $321,002. The issue of the correct year of inclusion of the $360,000 of income was resolved in Hagestad v. Commissioner, T.C. Memo. 1993-300, issued on July 13, 1993,

wherein we decided that such income was properly reported by petitioner in 1987. The amount of tax petitioner paid for 1987 was never different from the amount he reported on his 1987 return.

During June 1993, petitioner filed claims for refund for the 1989, 1990, and 1991 taxable years, in which petitioner claimed carryovers of the 1986, 1987, and 1988 suspended CLD's, pursuant to section 465(a)(2). The amount of the deduction which was carried forward from 1987 to 1991 was $171,318. The claims for 1990 and 1991 were handled by Revenue Agent Phillip Valenzuela, who was thoroughly familiar with the 1991 notice of deficiency and the 1992 stipulation. The claim for 1989 was allowed by respondent on or about May 31, 1993. The claims for 1990 and 1991 were allowed by respondent on April 17, 1995 (the 1995 refund).

For the purposes of applying section 6501(e)(1), the amount of gross income reported by petitioner for taxable year 1987 was $2,092,344. Neither petitioner nor respondent executed any waivers or extensions pursuant to section 6501(c)(4) for extending the period of time for assessing the tax liability for any year at issue.

- 5 -

<u>Discussion</u>

Section 6501(a) provides that the Commissioner generally has 3 years from the date of the filing of a return to assess the tax.  There are several exceptions listed in section 6501 (for cases in which, for example, fraud or substantial omission of items are involved) which the parties agree do not apply here. Respondent did not issue the 1995 notice of deficiency within the time required by section 6501.  Thus, this failure would act as a bar to the assessment of tax for 1987 unless respondent can obtain the benefit of the mitigation provisions of sections 1311 through 1314.

The mitigation provisions were first enacted in 1938 to prevent the Government or the taxpayer from obtaining "an unfair benefit * * * by assuming an inconsistent position and then taking shelter behind the protective barrier of the statute of limitations."  S. Rept. 1567, 75th Cong., 3d Sess. 49 (1938), 1939-1 C.B. (Part 2) 779, 815.  These are very technical provisions, written to cover only specific instances of inconsistent treatment, and are not intended to grant the Court sweeping equitable powers.  <u>Bolten v. Commissioner</u>, 95 T.C. 397, 403 (1990), and cases cited thereat.  On the other hand, one must not construe the provisions so strictly or so narrowly as to undermine the purpose for which they were enacted.  <u>Id.</u>

The factual frame of reference herein is: (1) petitioner took a CLD of $321,002 on his 1987 return; (2) upon the audit of that return, respondent disallowed the deduction but did not determine a deficiency for that year because respondent removed $360,000 of income included in that return on the ground that it was properly includable in income for 1986; (3) by virtue of our decision in Hagestad v. Commissioner, supra, respondent's position as to the includability of the $360,000 in income was rejected, and petitioner's position that it was properly reported in 1987 was sustained; (4) as a result of the expiration of the 3-year period of limitations in respect of 1987, the effect of the foregoing events was to leave petitioner's 1987 return accepted as filed, thereby giving petitioner the full benefit of the CLD which respondent had disallowed on audit; (5) petitioner, based upon respondent's disallowance of the CLD for 1987 and the suspension provisions of section 465(a)(2), applied a portion of that deduction in an amended return for 1991 and received a refund in 1995.

The question before us is whether, under the foregoing circumstances, respondent can obtain the benefit of the mitigation provisions.

Respondent contends that petitioner received the benefit of a CLD of $321,002 in 1987, and then again (to the extent of $171,318) in 1991 (by virtue of the 1995 refund), and that this

scenario is a textbook example of the kind of abuse the mitigation provisions were designed to prevent. Petitioner, on the other hand, contends that the 1987 CLD was disallowed, and that the fact that respondent failed timely to assess a deficiency does not alter this fact. Thus, petitioner argues, he did not maintain an inconsistent position by carrying forward the disallowed deduction as permitted by section 465(a)(2). Petitioner asserts that whatever unpaid tax liability which might exist is due not to any action on the part of petitioner, but is a consequence of respondent's litigation gamble.

In Fruit of the Loom, Inc. v. Commissioner, 72 F.3d 1338, 1341-1342 (7th Cir. 1996), affg. T.C. Memo. 1994-492, the Court of Appeals for the Seventh Circuit approved our articulation of the following elements involved in determining whether the mitigation provisions apply:

> (1) An error occurred in a taxable year which cannot otherwise be corrected by operation of law, sec. 1311(a);

> (2) there was a determination, within the meaning of section 1313(a), for another year with respect to the item giving rise to the error, sec. 1311(a);

> (3) the determination was within one of the categories enumerated in section 1312 as a circumstance of adjustment (e.g., a double allowance of a deduction, sec. 1312(2)), sec. 1311(a); and

(4) the party who prevailed in the determination maintained a position that was adopted there and that was inconsistent with the erroneous treatment. Sec. 1311(b). If the mitigation provisions apply, the taxable income for the year of the error may be adjusted under section 1314. Sec. 1311(a). Having invoked the mitigation provisions, respondent bears the burden of proving that each of the four requirements has been met. Fruit of the Loom, Inc. v. Commissioner, 72 F.3d at 1341.

Initially, we think it clear that there was an error in that, as a result of our decision in Hagestad v. Commissioner, T.C. Memo. 1993-300, petitioner in fact received the benefit of a CLD for 1987. It is equally clear under section 465(a)(1) that petitioner was not entitled to the CLD for 1987, and indeed petitioner so concedes. It is also clear that the correction of that error is barred by the normal 3-year period of limitations. Thus, the first of the above-stated elements is present.

Turning to the second element, a "determination" within the meaning of section 1313(a) includes "a final disposition by the Secretary of a claim for refund". Sec. 1313(a)(3). Petitioner concedes that the 1995 refund is such a determination for the purposes of the mitigation provisions. The determination must also be with respect to the item giving rise to the error. Sec. 1311(a); sec. 1.1311(b)-1, Income Tax Regs.; cf. B.C. Cook &

- 9 -

Sons, Inc. v. Commissioner, 65 T.C. 422 (1975) (Tannenwald, J.,
concurring at 432 (mitigation provisions did not apply because
the same items not involved)), affd. 584 F.2d 53 (5th Cir. 1978).
Petitioner argues that any deficiency with respect to his 1987
taxable year was not due to the CLD, which petitioner concedes he
was not entitled to, but due to the inclusion of the $360,000 of
income, which respondent initially excluded from the 1987 taxable
year, and was forced to re-include as a result of our decision in
Hagestad v. Commissioner, supra.  By this argument, petitioner
appears to be maintaining that it was the omitted income that was
the item giving rise to the error.

     Petitioner's analysis fails to recognize that, while the
omission of income provided the foundation for the resulting
error, it was the CLD that became the error which gave rise to
the application of mitigation provisions.  In this respect,
Bolten v. Commissioner, 95 T.C. 397 (1990), provides helpful
guidance.  In that case, the disallowance of certain deductions
resulted in increased amounts of taxable income and became the
foundation for a reallocation of net operating loss deductions.
In holding that the mitigation provisions applied, we concluded
that the same item was involved, namely the net operating loss.
As we see it, the only difference between the situation in that
case and that involved herein is that, in Bolten, unrelated
deductions were involved whereas in the instant case we are

dealing with an item of income. However, both deductions and omissions affect the determination of taxable income. Consequently, we think that any distinction based on a "same item" argument is a distinction without a difference. In short, we are satisfied that the second element enunciated in Fruit of the Loom, Inc. v. Commissioner, supra, has been satisfied.

Finally, we turn to the third and fourth elements enunciated in Fruit of the Loom test. These elements require that there be a double deduction, section 1312(2), and that petitioner have maintained inconsistent positions with respect to the deduction, section 1311(b). That is, the carryforward of a portion of the CLD to 1991 must be inconsistent with the "treatment accorded" that portion in 1987. Sec. 1.1311(b)-1(a), Income Tax Regs. Since it is clear that a portion of the CLD was allowed in 1991 by the 1995 refund, we would have to find that that portion of the deduction had also been allowed in 1987 for the mitigation provisions to apply. Thus, the decision in this case turns on what exactly was the "treatment accorded" the deduction in 1987-- was it allowed or not?

If it was allowed, this would be the "erroneous treatment" needed to invoke the mitigation provisions, the determination would reflect a case of double deduction, one of the enumerated circumstances of adjustment, section 1312(2), and the facts of this case would fit squarely under the prohibition against double

deductions set forth in the statute, the regulations, and the legislative history.  Sec. 1312(2); S. Rept. 1567, supra, 1939-1 C.B. (Part 2) at 814-817; sec. 1.1312-2(b), Example (1), Income Tax Regs.  If it was not allowed, there would be no error and no inconsistent position, the carryforward would not have resulted in a double deduction, and the mitigation provisions would not apply to lift the bar of section 6501.

Petitioner contends that the CLD's were not "allowed" for purposes of the statute, but were suspended and properly carried forward under the "at risk" rules of section 465.  In the 1991 notice, respondent disallowed the deductions.  Petitioner did not contest this disallowance, and agreed to the 1992 stipulation, which disallowed the CLD's for 1986[2] and 1988, but was silent as to 1987.  Petitioner contends that, with the 1992 stipulation, he was agreeing in both principle and practice that all CLDs were subject to the "at risk" rules of section 465, including the one claimed in 1987.  Petitioner notes that neither he nor respondent has ever changed position as to the allowability of the CLD's.

Petitioner does, however, recognize that the tax he paid for 1987, which was computed after taking the CLD for that year was never altered by the 1992 stipulation.  Petitioner argues:

---

[2]  A deduction in the amount of $135,000, the amount petitioner had "at risk" in the transaction for purposes of sec. 465, was allowed; all other amounts were disallowed and suspended.

> The fact the disallowance did not result in the imposition or collection of any additional tax is not relevant.

Respondent contends to the contrary, and we agree, that it is very relevant.

Petitioner confuses the legal question of whether or not the CLD's were <u>allowable</u> or <u>should have been allowed</u> with the factual question of whether or not they <u>were actually allowed</u>.[3]  For this reason, we see no need to decide whether the 1992 stipulation would apply to the CLD originally allocated to the 1987 taxable year, as this would only help determine whether the deduction at issue was <u>allowable</u>, not whether it was actually <u>allowed</u>.

With respect to petitioner's 1987 taxable year, petitioner filed a return reporting a certain amount of income, which he reduced by a certain amount of CLD.  He then paid tax on this lower amount of net income.  Regardless of respondent's various positions during the dispute and litigation, the amount of tax petitioner paid for 1987 never changed, and was never different from the amount he reported on his 1987 return.

---

[3]  For example, petitioner argues that respondent's decision, through Revenue Agent Valenzuela, to grant petitioner's 1995 refund, was necessarily based on the conclusion that the CLD's were not <u>allowed</u> in 1987.  We, however, think respondent's actions could just as well have been based on a conclusion that the deductions <u>should not have been allowed</u>, and that the proper action at the later date was to allow the refunds based on the carryforwards, and then to press for correction of the original mistake using the mitigation provisions.  See <u>Kenosha Auto Transport Corp. v. Commissioner</u>, 28 T.C. 421, 425 (1957).

In <u>Chertkof v. Commissioner</u>, 66 T.C. 496 (1976), affd. 649 F.2d 264 (4th Cir. 1981), the Commissioner asserted a deficiency based on shifting income from a later year to an earlier year. The Commissioner issued a refund on his own initiative for the later year. The taxpayer paid the deficiency, sued in District Court, and won a refund for the earlier year. The Commissioner then sought relief under the mitigation provisions to assert a deficiency with respect to the later year. This Court rejected the taxpayers' argument that there was no error as to the later year because the refund had been forced upon them.

In <u>Priest Trust v. Commissioner</u>, 6 T.C. 221 (1946), the taxpayer trust was prepared to pay tax on a distribution on behalf of a beneficiary, but the Commissioner gave it a deduction. This Court later determined that the beneficiary should not be taxed. In a later action by the Commissioner under the mitigation provisions to re-open the year the trust received the deduction, this Court rejected the trust's argument that it "privately" maintained a consistent position because it did not originally claim the deduction:

> It does not seem important to us who proposed the allowance of the deduction, or upon what theory. The important fact is that it was allowed, that a tax was paid pursuant to the allowance of the deduction, and that the action was erroneous. * * * [<u>Id.</u> at 226.]

In the same way, in spite of the fact that petitioner agreed in principle that he was not entitled to the 1987 CLD, he

nevertheless "took" it, that is, used it to reduce his gross income, and paid less tax as a result, and it was thus certainly "allowed", in the plain meaning of those words. "To argue otherwise is merely to play games with words." Bolten v. Commissioner, 95 T.C. at 407.

The fallacy of petitioner's position herein becomes apparent in the following context. Assume a scenario in which: (1) Only petitioner's 1986 and 1988 returns had been audited and the CLD's for those years had been disallowed and, after litigation, the disallowances were sustained; (2) petitioner's 1987 return had never been audited; and (3) petitioner had applied the decisions in respect of 1986 and 1988 to the 1987 CLD in determining its carryforward of suspended amounts under section 465(a)(2) and obtained a refund for 1991 based on those carryforwards. There can be no doubt that, in this scenario, the CLD was allowed for 1987, for purposes of the mitigation provisions. We think that the situation in this case is no different. The inescapable fact is that the determination that the $360,000 was properly reported by petitioner in 1987 produced the result that the disallowance of the CLD was negated because of the expiration of the period of limitations and petitioner was left in the same position as he would have been in if his 1987 return had never been audited.

In our analysis, we have kept in mind that the legislative history contemplated the type of facts involved here: "disputes

as to the year in which * * * deductions belong  * * * should never result in  * * * a double reduction of tax".  S. Rept. 1567, supra, 1939-1 C.B. (Part 2) at 815.  Because we hold that the CLD was "allowed" in 1987 for the purposes of sections 1311 and 1312, we find that there was a double deduction and that petitioner did maintain an inconsistent position with respect to the CLD.  Thus, the third and fourth elements enunciated in Fruit of the Loom, Inc. v. Commissioner, supra, have been met. Accordingly, we conclude that the mitigation provisions are applicable and operate to lift the time bar of section 6501.

The mitigation provisions, once applicable, do not allow respondent to re-examine the barred year de novo, but rather, merely allow an adjustment to the extent of the inconsistency. Secs. 1311(a), 1314; sec. 1.1314(a)-1(c), Income Tax Regs.; see 4 Bittker & Lokken, Federal Taxation of Income, Estates and Gifts par. 113.9.5 at 113-34 (2d ed. 1992).  In this case, respondent may adjust petitioner's 1987 income by the amount of the CLD taken in 1987 and carried forward to 1991, agreed to by the parties to be $171,318.

Additions to Tax

Petitioner concedes that, were we to find the mitigation provisions applicable, any resulting underpayment in tax was due to a tax-motivated transaction as described in section 6621(c).

Thus, we sustain respondent on this issue.  The addition will be based on the figure agreed to by the parties of $171,318.

Due to concessions by respondent,

Decision will be entered

under Rule 155.
